733 A.2d 996

## OFFICE OF PEOPLE'S COUNSEL

v.

## MARYLAND PUBLIC SERVICE COMMISSION.

No. 120, Sept. Term, 1997.

Court of Appeals of Maryland.

July 27, 1999.

2

4

Michael J. Travieso, People's Counsel (John D. Sayles, Asst. People's Counsel, on brief), Baltimore, for Appellant.

Bryan G. Moorhouse (Susan S. Miller, Public Service Com'n, on brief), Baltimore; David K. Hall (Bell Atlantic–Maryland, Inc.; James P. Garland, Miles & Stockbridge, on brief), Baltimore, for Appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

BELL, Chief Judge.

The central issue in this case is whether telecommunication rates set pursuant to Maryland Code (1957, 1995 Repl.Vol.) Article 78, § 69(e) [1], an "alternative" form of regulation, must meet the "just and reasonable rates" requirement of the traditional rate of return regulatory scheme, and in particular § 68(a).

The Public Service Commission (the "Commission" or "PSC"), in Order No. 73011, *In Matter of the Inquiry into Alternative Forms of Regulating Telephone Companies,* Case

---

1. Maryland Code, Article 78 was repealed by Acts 1998, ch. 8, § 1, effective October 1, 1998 and recodified in the Public Utility Companies Article. The provisions regarding rate regulation are now codified in § 4–101 et seq. of the PUC Article. Section 4–102 is derived without substantive change from former Article 78, § 68(a), Revisor's note, see also Acts of 1998, ch. 653, and § 4–101 is similarly derived from § 69(a). *See* Revisor's note. The provisions of § 69(e) are now codified in § 4–301, also without substantive change. See, in addition to the Revisor's note, Acts of 1998, ch. 653. We shall refer throughout this opinion to the statute in effect at the time of the actions giving rise to this appeal.

No. 8715, 1995 WL 848271, adopted an alternative form of regulation, specifically a price cap regulatory plan. In so doing, it concluded that § 69(e) permits it to subscribe to a "broader and more forward-looking measure of rate reasonableness than can be obtained through an examination and matching of the [telecommunications company's] rate base, revenues, and expenses." More particularly, the Commission adopted the view that § 69(e) obviates the requirement that it set "just and reasonable rates" as §§ 68(a) and 69(a) prescribe.

Disagreeing with the Commission's interpretation of the inter-relationship among these statutory provisions and alleging that the Commission's factual determinations were arbitrary and capricious, the Office of People's Counsel ("People's Counsel" or "OPC") sought judicial review of the Commission's Order in the Circuit Court for Wicomico County. Although that court disagreed with the Commission, finding that § 69(e) did not relieve it of meeting the obligation § 68(a) imposes, to set "just and reasonable rates," it nevertheless affirmed the Commission's Order. The court concluded that "it does not follow ... that the determination of whether a rate is 'just and reasonable' is confined to or dictated by the provisions of Sec. 69(a). That 'subsection' applies to the determination when public service company rates are set by the 'traditional method' outlined in Sec. 69(a). It no more applies to determinations made pursuant to the authority of Sec. 69(e) than to those made pursuant to the authority of Sec. 69(b)."

We shall affirm the judgment of the circuit court.

### Factual and Procedural Context

The Commission has regulated the telecommunication industry in Maryland since 1910. *See* 1910 Maryland Laws, ch. 180, § 13. Traditionally, the Commission utilized "test year" data to project the future cost of service and expenses of Bell Atlantic (the former Chesapeake and Potomac ("C & P") Telephone Company of Maryland) and, ultimately, to set telephone rates. The rates are designed to

yield to Bell Atlantic a "revenue requirement" sufficient to pay its prudent expenses and to allow it the opportunity to earn a fair return on investments. *See Public Service Comm'n v. Baltimore Gas & Electric Co.*, 273 Md. 357, 360 n. 2, 329 A.2d 691, 694 n. 2 (1974), in which this Court, citing 1 A.J.G. Priest, Principles of Public Utility Regulation 45 (1969), summarized the determinations that undergird public utility rates, as follows:

> "The orthodox making of public utility rates requires four basic determinations: (1) what are the enterprise's gross utility revenues under the rate structure examined; (2) what are its operating expenses, including maintenance, depreciation and all taxes, appropriately incurred to produce those gross revenues; (3) what utility property provides the service for which rates are charged and thus represents the base (rate base) on which a return should be earned and (4) what percentage figure (rate of return) should be applied to the rate base in order to establish the return to which investors in the utility enterprise are reasonably entitled."

Thus, the Commission's role is to determine what rates the utility should be allowed to charge in future years to cover prudent expenses and earn a reasonable profit.

The "rate-of-return" regulatory scheme is prescribed primarily in two statutes: Maryland Code (1957, 1995 Repl. Volume, 1997 Cum.Supp.) Article 78, §§ 68(a) and 69(a). Pursuant to § 68(a),

> "The Commission shall have the power to determine just and reasonable rates of public service companies, whether as maximum, minimum or maximum and minimum, respectively. The rates so determined shall be fixed by order to be served upon each public service company affected thereby. This subsection does not apply to small rural electric cooperatives."

Section 69(a) addresses, *inter alia*, the "[s]tandard for determining rates and charges" and provides:

> "(a) *'Just and reasonable rates' defined; common carriers excepted.*—'Just and reasonable rates' means rates which

are not in violation of any of the provisions of the article, which fully consider and are consistent with the public good, and which will result in an operating income to the public service company, except common carriers, yielding, after reasonable deduction for depreciation and other necessary and proper expenses and reserves, a reasonable return upon the fair value of the company's property used and useful in rendering services to the public."

In the early 1980's, the Commission began modifying the regulation of Bell Atlantic's rates in an effort to allow Bell Atlantic more pricing flexibility, with the intent that Bell Atlantic would have the incentive to operate more efficiently. Subsequently, in the early 1990's, the Commission began to investigate alternatives to rate-of-return rate-making for Maryland's regulated telephone companies; however, recognizing that its authority in this area was limited by statute, § 68(a) requiring the Commission to "determine just and reasonable rates of public service companies," it was unable to adopt certain attractive price plans recommended by Bell Atlantic. In response to requests from the industry and the Commission, the Maryland General Assembly amended the PSC Law in 1995, *see* 1995 Maryland Laws, ch. 140 and 141, by adding § 69(e) to Article 78. That section, effective June 1, 1995, states:

"(e) *Regulation of telephone company.*—Notwithstanding the provisions of subsection (a) of this section or any other provision of law to the contrary, the Commission may regulate a telephone company by means of alternative forms of regulation, which may include, but not limited to, the use of price regulation, revenue regulation, ranges of authorized return, rate of return, categories of services, or price indexing, if it finds, after notice and hearing that the alternative form of regulation protects consumers by, at a minimum, producing affordable and reasonably priced basic local exchange service, as defined by the Commission, by ensuring the quality, availability, and reliability of telecommunications services through the State; encourages the development of competition; and is in the public interest."

Soon after § 69(e) took effect, four "price cap" proposals, each offering an alternative method of regulating Bell Atlantic's rates, were filed with the Commission. Also filed with the Commission were requests to reduce Bell Atlantic's rates. The first "price cap" proposal, contained in a "Petition for Implementation of Competition Plus: A True Price Cap Plan for Maryland," was made by MCI Communications, Inc. ("MCI".) The MCI proposal was followed a short time later by a petition, filed by the Office of People's Counsel, to reduce Bell Atlantic's rates. Subsequently, the Commission, by Order No. 73011, *In the Matter of the Inquiry Into Alternative Forms of Regulating Telephone Companies*, Case No. 8715, 1995 WL 848271, instituted a formal proceeding to investigate the alternatives for regulating telephone companies permitted by § 69(e), its newly acquired statutory authority. Bell Atlantic also filed a "Petition for Adoption of a Price Cap Form of Alternative Regulation." The PSC Staff and People's Counsel later filed separate price cap proposals.

The Commission's order, which adopted a procedural schedule and required the parties to develop and file a list of issues, contemplated an investigation that would include "one evidentiary proceeding which will encompass an examination of all alternative regulation proposals . . . as well as a review of Bell Atlantic's rates as necessary to meet the requirements of [section] 69(e)." Also, it made clear that "[a]ll parties should be aware that the Commission envisions that this proceeding will involve something less than a traditional rate case."

Following the receipt of written testimony, evidentiary hearings before the full Commission, at which witnesses were cross-examined on their written testimony, and argument by the parties, the Commission issued Order No. 73011, *In the Matter of the Inquiry Into Alternative Forms of Regulating Telephone Companies*, Case No. 8715, adopting a Price Cap Plan,[2] (hereinafter, the "Price Cap Order"), to replace the

---

2. Price Caps are often utilized to regulate the prices that a monopoly utility in the transition from a monopoly to a competitive market may charge. They include a wide variety of "competitive safeguards" to

rate-of-return regulation. The Commission thus abandoned
traditional rate setting under § 69(a) in favor of a price cap
under the new § 69(e). The order described the plan adopted
as an incentive-based price cap regime designed to simulate
market competition. Under the plan, the PSC set the initial
price for telecommunication services ("going-in-rates"), with
future price changes being controlled by a formula that takes
into account the rate of inflation, the increasing productivity of
the Company and costs, such as taxes and regulatory require-
ments ("exogenous changes"), that are beyond the Company's
control.

The Price Cap Plan the Commission adopted was of its own
design, it having found that none of the plans proposed by the
parties was acceptable in its entirety. Its Order adopting the
plan does not expressly address the "just and reasonable"
standard, but instead adopts a "broader and more forward-
looking measure of rate reasonableness than can be obtained
through an examination and matching of the Company's rate
bases, revenue, and expenses." The Commission set Bell
Atlantic's "going in" rates, using its existing rates and ordered
a reduction in the "access rates paid by long-distance carriers
to terminate calls on Bell Atlantic's local network."

Both People's Counsel and MCI sought judicial review in
the Circuit Court for Wicomico County. The actions having
been consolidated, following a hearing, the court issued an
Opinion and Order, affirming the Commission's Order. The
court specifically concluded that, when setting rates pursuant
to § 69(e), the Commission still was required by § 68(a) to set
"just and reasonable" rates. People's Counsel noted its ap-
peal to the Court of Special Appeals. Before the case was
heard by the intermediate appellate court, this Court, on its
own motion, issued a Writ of Certiorari.

---

encourage other companies to enter the market and compete with the
monopoly provider. Competitive safeguards are designed to restrain
the monopolist from anti-competitive pricing, squeezing out competi-
tors, exercising its dominant market position and generally thwarting
competition by using its profits from monopoly services.

Before this Court, People's Counsel argues that, by adopting the Price Cap Order, the Commission (1) improperly interpreted Article 78, § 69(e) and, as a result, failed to set "just and reasonable" rates for the telecommunications industry, as § 68(a ) requires and (2) acted arbitrarily, thus in violation of the residential telephone customers' substantive due process rights. People's Counsel urges the Court to reverse and remand the case to the Commission for further proceedings. In addition to determining that the "just and reasonable rates" standard of § 68(a) applies to rates set pursuant to § 69(e), People's Counsel asks the Court to require the Commission:

"to explain the term 'just and reasonable rates' as applied to alternative forms of regulation under § 69(e), and to establish criteria to evaluate rates under that definition;

"to explain 'affordable and reasonably priced basic local exchange service' as required by § 69(e) and develop criteria for its application;

"once all explanations and criteria are in place, to reevaluate whether all rates set in Order No. 73011 are 'just and reasonable' and whether the elements of basic local exchange service are 'affordable and reasonably priced'; and

"to make adequate findings of fact based on the record, conclusions of law and determinations of the issues based on a reasoned analysis of those finding and conclusions."

Addressing the standard of review of Commission decisions, People's Counsel contends that the issue this case presents concerns legal, not factual, determinations. Thus, it points out that, when administrative agencies like the Commission determine questions of law, "[a]ppellate courts are not bound by the decision of the agency, but may substitute their interpretation of the statute for that of the agency." Because, People's Counsel maintains, in this case, the Commission was required only to interpret a statute, this Court is not obligated to give any deference to the Commission's interpretation.

Predictably, the Commission takes a contrary view, arguing instead that "[a] review of the relevant statutory and case law

clearly demonstrates that 'a great deal of discretion is necessarily vested in the Commission in order that it may discharge its important and complex duties,' " (quoting *People's Counsel v. Public Service Comm'n.*, 52 Md.App. 715, 722, 451 A.2d 945, 949 (1982), *cert. denied*, 295 Md. 441 (1983)). The Commission also maintains that a significant measure of its discretionary authority includes evaluating and balancing conflicting opinions and recommendations presented during hearings, and using its expert judgment to arrive at reasoned determinations that are statutorily required to be accorded great judicial deference.

The Legislature has clearly defined the powers of the Commission, as follows:

" § 1. *Jurisdiction and powers of Commission generally.*

"The jurisdiction and powers of the Public Service Commission shall extend to all public service companies, as hereinafter defined, engaged in or operating a utility business in this State. . . . The powers of the Commission shall be liberally construed; and the Commission shall have the powers specifically conferred by this article and by any other law, and also all implied and incidental powers necessary and proper to carry out effectually the provisions of this article."

Md.Code (1957, 1995 Repl.Vol.) Art. 78, § 1.[3] The scope of the Court's review also is expressly defined:

"§ 97. *Scope of Review.*

"Every final decision, order, rule or regulation of the Commission shall be prima facie correct and shall be affirmed unless clearly shown to be (1) in violation of constitutional provisions, or (2) not within the statutory authority or jurisdiction of the Commission, or (3) made upon unlawful procedure, or (4) arbitrary or capricious, or (5) affected by other error of law, or (6) if the subject of review is an order entered in a contested case after hearing, such order is

---

**3.** Unless otherwise indicated all future statutory references will be to this version of Article 78.

unsupported by substantial evidence on the record considered as a whole."

Art. 78, § 97.

In addition, this Court has made clear that a decision of the Commission is subject to judicial review, but it will not be disturbed on the basis of a factual question except upon clear and satisfactory evidence that it was unlawful and unreasonable. *See Public Service Commission v. Byron,* 153 Md. 464, 479, 138 A. 404, 410 (1927); *West v. United Rys. & Elec. Co.,* 155 Md. 572, 582, 142 A. 870, 873 (1928) (quoting *Interstate Commerce Commission v. Union Pac. R.R. Co.,* 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308 (1912); *Mayor and Council of Crisfield v. Public Serv. Comm'n,* 183 Md. 179, 185–87, 36 A.2d 705, 708–09 (1944); *Public Serv. Comm'n v. Baltimore Transit Co.,* 207 Md. 524, 531, 114 A.2d 834, 836–37 (1955); *Public Serv. Comm'n v. Baltimore Gas & Elec. Co.,* 273 Md. 357, 361–62, 329 A.2d 691, 694 (1974); *Baltimore Gas & Elec. Co. v. Public Serv. Comm'n,* 305 Md. 145, 161–62, 501 A.2d 1307, 1315 (1986)). Such a decision is accorded the respect due an informed governmental agency that is aided by a competent and experienced staff. *Potomac Edison Co. v. Public Serv. Comm'n,* 279 Md. 573, 582–83, 369 A.2d 1035, 1041 (1977), citing *Balto. Trans. Co. v. Pub. Ser. Comm.,* 206 Md. 533, 558, 112 A.2d 687, 698 (1955). Questions of law, however, are "completely subject to review by the courts," *Cambridge v. Eastern Shore Public Serv. Co.,* 192 Md. 333, 339, 64 A.2d 151, 154 (1949)(citing *Mayor & Council of Crisfield v. Public Serv. Comm'n,* 183 Md. at 189, 36 A.2d at 710). *See also Baltimore Gas and Elec. Co. v. Department of Health and Mental Hygiene,* 284 Md. 216, 395 A.2d 1174 (1979), although the agency's interpretation of a statute may be entitled to some deference. *See Baltimore Gas & Elec. Co. v. Public Serv. Comm'n,* 305 Md. at 161–62, 501 A.2d at 1315. That deference is, by no means, dispositive, nor anywise as great as that applicable to factual findings or mixed questions of law and fact. *Baltimore Building and Constr. Trades Council v. Barnes,* 290 Md. 9, 14, 427 A.2d 979, 982 (1981).

This is consistent with the standard of review applicable to all administrative agencies. *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 836–37, 490 A.2d 1296, 1300–02 (1985). *See Liberty Nursing Center, Inc. v. Department of Health and Mental Hygiene,* 330 Md. 433, 443, 624 A.2d 941, 946 (1993); *Caucus Distrib., Inc. v. Maryland Securities Comm'r,* 320 Md. 313, 324, 577 A.2d 783, 788 (1990); *Maryland State Police v. Lindsey,* 318 Md. 325, 334, 568 A.2d 29, 33 (1990); *State Election Bd. v. Billhimer,* 314 Md. 46, 58, 548 A.2d 819, 825 (1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1644, 104 L.Ed.2d 159 (1989); *Washington Nat'l Arena v. Comptroller,* 308 Md. 370, 378–79, 519 A.2d 1277, 1281–82 (1987).

*Barnes* is an example of a case in which review of an administrative decision resolving a legal question was involved. At issue in that case was the meaning of "interested person" as used in the Maryland Prevailing Wage Law, Maryland Code (1957, 1979 Repl.Vol.) Art. 100, § 101(c).[4] 290 Md. at 14, 427 A.2d at 981. Considering "the language of the enactment in its natural and ordinary signification," *id.* at 15, 427 A.2d at 982, this Court held that the Commissioner of Labor and Industry wrongly determined that a labor union council was an "interested person" within the meaning of that section. Rejecting the argument that the agency's interpretation of the statute was not given proper deference, the Court explained:

---

**4.** Maryland Code (1957, 1979 Repl.Vol.) Art. 100 § 101(c), in pertinent part, provides:

"(c) *Hearing; filing of order.* Within thirty (30) days after an investigation has been completed, the Commissioner shall order a hearing thereon at a time and place to be specified and shall give notice thereof ... (to) all interested persons, including the interested public body. Every interested person shall have an opportunity to be heard in respect to the matters complained of.... The Commissioner in such an investigation and hearing shall be deemed to be acting in a judicial capacity and shall have the right to issue subpoenas, administer oaths, and examine witnesses.... (U)pon such hearing and investigation, the Commissioner shall determine the issues thereon and shall make and file an order in his office stating such determination and forthwith serve a copy of such order, together with notice of filing upon the public body interested, and the parties to such proceeding...."

"The Council misunderstands the standard of review. We pay great deference to findings of fact of an administrative agency since it has heard and observed the witnesses. The standard for review of the decision of an administrative agency was stated for the Court by Chief Judge Hammond in *Insurance Comm'r v. Nat'l Bureau*, 248 Md. 292, 309, 236 A.2d 282 (1967), as 'whether a reasoning mind reasonably could have reached the *factual* conclusion the agency reached.' (Emphasis added.) This has been repeated in a host of cases since then. *See, e.g., Resetar v. State Bd. of Education*, 284 Md. 537, 554, 399 A.2d 225 (1979); *Folly Farms I, Inc. v. Trustees*, 282 Md. 659, 670, 387 A.2d 248 (1978); *Shell Oil Co. v. Supervisor*, 278 Md. 659, 670, 366 A.2d 369 (1976); and *Pemberton v. Montgomery County*, 275 Md. 363, 367–68, 340 A.2d 240 (1975). Here, however, the review is one of law. It is true that as we stated in *Holy Cross Hosp. v. Health Services*, 283 Md. 677, 685, 393 A.2d 181 (1978), in the matter of statutory construction it is well understood that the view taken of a statute by administrative officials soon after its passage is strong, persuasive influence in determining the judicial construction and should not be disregarded except for the strongest and most urgent reasons. *See, e.g., F. & M. Schaefer v. Comptroller*, 255 Md. 211, 218, 257 A.2d 416 (1969); *Smith v. Higinbothom*, 187 Md. 115, 132–33, 48 A.2d 754 (1946); and *John McShain, Inc. v. Comptroller*, 202 Md. 68, 73, 95 A.2d 473 (1953), and cases cited in each. However, as Judge Delaplaine said for the Court in *Rogan v. Baltimore & O.R. R.*, 188 Md. 44, 58, 52 A.2d 261 (1947), '(W)here the language is plain and unambiguous, the judicial construction cannot be controlled by extraneous considerations. No custom, however venerable, can nullify the plain meaning and purpose of a statute.' *Schaefer* could be cited for the latter proposition because we there held, despite the prior construction by the Comptroller, that his 'rule as (t)here sought to be applied (was) an invalid attempt to render taxable that which the General Assembly ha(d) precisely defined as not taxable.' 255 Md. at 219, 257 A.2d 416."

*Id.* at 14–15, 427 A.2d at 981–82. We made the same point in *Baltimore Gas & Elec. Co. v. Public Serv. Comm'n,* 305 Md. at 161–62, 501 A.2d at 1315, when we said:

"The weight to be accorded an agency's interpretation of a statute depends upon a number of considerations. Although never binding upon the courts, the contemporaneous interpretation of a statute by the agency charged with its administration is entitled to great deference, especially when the interpretation has been applied consistently and for a long period of time.

"Another important consideration is the extent to which the agency engaged in a process of reasoned elaboration in formulating its interpretation of the statute. When an agency clearly demonstrates that it has focused its attention on the statutory provisions in question, thoroughly addressed the relevant issues, and reached its interpretation through a sound reasoning process, the agency's interpretation will be accorded the persuasiveness due a well-considered opinion of an expert body.

"In addition, the nature of the process through which the agency arrived at its interpretation is a relevant consideration in assessing the weight to be accorded the agency's interpretation. If the interpretation is the product of neither contested adversarial proceedings nor formal rule promulgation, it is entitled to little weight." (Citations omitted).

*See generally* 2A N. Singer, Sutherland on Statutes and Statutory Construction § 49.05 ("an agency's interpretation is not binding on the court, and will not be upheld if it is considered to be clearly erroneous." (footnote omitted)).

In the instant case, the term, "affordable and reasonably priced local exchange service," as used in § 69(e), has never been interpreted, much less consistently applied, for a substantial period of time by the Commission. Moreover, the Commission's proffered interpretation of § 69(e) is neither long-standing nor a product of a "process of reasoned elaboration." Therefore, with respect to the interpretation of § 69(e),

the scope of this Court's review is essentially plenary, with a primary reliance upon the plain meaning and purpose of the statute. Substantial deference, however, is accorded to the Commission's factual determinations and to its implementation of the statutory provisions based on those factual determinations.

The Commission contends that, under § 69(e), it is not required to apply the "just and reasonable rates" standard of sections 68(a) and 69(a) because that standard applies only to a rate-of-return regulation, not to alternative means of telecommunication regulation, such as a price cap regulatory scheme. The Commission argues:

> "The Act specifically permits traditional rate base/rate-of-return regulation to be supplanted by alternative modes of regulation. Thus, rate-of-return regulation merely is one of a list of choices. While the alternative forms of regulation must protect consumers, this protection may be achieved within the new regulatory structures authorized by the Act, not by requiring superimposition of old methods which are no longer mandatory."

To be sure, the "old method" of establishing rates that conform to the "just and reasonable rates" standard and requirements of sections 68(a) and 69(a) is no longer mandatory when regulation is done by means other than the traditional rate-of-return methodology. This approach, the Commission argues, is not only supported by legislative intent, but is made crystal clear by the Legislature's use in the first clause of § 69(e) of the language, "Notwithstanding the provisions of subsection (a) of this section." Stated differently, according to the Commission, the "notwithstanding" clause of § 69(e) permits the Commission to disregard the requirements of § 69(a) because that statute has historically been interpreted to mean that "the Commission *must* use a rate-of-return methodology to establish just and reasonable rates." (emphasis in original). Relying on *People's Counsel v. Heintz,* 69 Md.App. 74, 87, 516 A.2d 599, 606 (1986) for support, the Commission asserts that "[t]he ratemaking provisions of [t]he Public Service Commission Law consistently have been interpreted to link 'just and

reasonable rates' to a rate-of-return methodology." Therefore, the Commission reasons, when the rate-of-return methodology is not used or another methodology is used, the applicability of the "just and reasonable rates" standard becomes "optional," rather than mandatory.

People's Counsel disagrees, contending that the Commission's interpretation of sections 68(a), 69(a) and 69(e), the relevant statutory provisions, does not conform with the Commission's previous interpretation of the significance of the "just and reasonable" standard in telecommunication regulations, the rules of statutory construction or the legislative history of those provisions. People's Counsel first points to *Re Chesapeake and Potomac Telephone Co.,* 79 Md. PSC 169 (1988), in which the Commission addressed the "just and reasonable rates" standard, articulated in § 68(a), within the context of alternatives to rate-of-return rate-making. There, the Commission opined:

> "The concept of just and reasonable rates is the cornerstone of regulation in Maryland and every other jurisdiction of the United States. The phrase "just and reasonable rates" appear frequently in The PSC LAW and the laws of many other jurisdictions. Any regulatory methods adopted by this Commission must result in just and reasonable rates in accordance with the provisions of The PSC Law."

* * *

> "Importantly, Section 56 ... states that 'the Commission shall enforce compliance by the public service companies with all requirements of the law.' Thus, the general authority of the Commission is broad, but the Commission must make certain that a public service company's rates and charges adhere to the 'just and reasonable' statutory requirement."

*Id.* at 188–89.

Furthermore, People Counsel argues that the Commission's interpretation of the statutes is "overly expansive" and renders § 68(a) nugatory. While People's Counsel seems to agree with the Commission that the § 69(a) definition of "just

and reasonable rates" is not directly applicable to alternative forms of regulation adopted under § 69(e), it maintains that § 68(a), as an "enabling" provision, requires the Commission to set just and reasonable rates for all public service companies, whenever § 69(e) is employed to determine rates, whatever the methodology utilized, and to develop a definition for "just and reasonable" consistent with that methodology. As support, he points out that in *Baltimore Gas & Elec. Co. v. Public Serv. Comm'n,* 305 Md. 145, 501 A.2d 1307 (1986), we said:

> "BG & E places great weight on the introductory phrase in § 54F(c), '[n]otwithstanding any other provisions of this article,' interpreting it to mean that in construing § 54F we must not look beyond the language of this single section. As we read it, this phrase simply means that the procedure set forth in § 54F controls within its area of applicability in spite of any apparent conflict with other parts of the Public Service Commission Law. It does not mean that § 54F must be interpreted in a vacuum, without due consideration of other consistent and complementary portions of the article."

*Id.* at 158, 501 A.2d at 1313.[5]

Section 68(a) and, for that matter, Md.Code (1957, 1995 Repl.Vol.) Art. 78, § 28(d),[6] People's Counsel maintains,

---

5. To that point, the Commission counters:

> "In *BGE,* the Court interpreted the phrase 'Notwithstanding any other provision of this article' to allow consideration of other *consistent and complementary* portions of Article 78. However, Section 68(a) and Section 69(a) are not complementary to Section 69(e)'s attempt to authorize the Commission to establish rates using other than traditional rate-of-return methodology. As noted by [People's Counsel], Section 69(a), in conjunction with 68(a) mandates the rate-of-return method. However, application of Section 69(a) is optional under Section 69(e). In those situations where the Commission chooses not to use Section 69(a), there is no statute for Section 68(a) to work in conjunction with. Thus, Section 69(e) controls in spite of any apparent conflicts with other parts of [t]he Public Service Commission Law."

(citation omitted)(emphasis in original).

6. Maryland Code (1957, 1995 Repl.Vol.) Art. 78, § 28(d) imposes on public service companies the affirmative duty to "[c]harge just and

charge the Commission with the responsibility of ensuring that public service companies only charge rates that are "just and reasonable." Additionally, People's Counsel argues that the Commission's conclusion that rates are "affordable and reasonably priced" is not a substitute for finding that rates are just and reasonable under § 68(a). He reasons: "The legislative intent, as evidenced by the statutory language and the legislative history, requires the [Commission] to make a finding that consumers have affordable and reasonably priced basic local exchange service *and* that the rates are just and reasonable under [section] 68(a)." People's Counsel adds that a failure to find that rates are just and reasonable effectively provides the public with no assurance that the telecommunications company is not "extracting monopoly profits."

Next, People's Counsel points to the "legislative history" of § 69. It maintains that, when the Commission requested in 1994 that Bell Atlantic submit draft legislation to modify § 69(a) and allow alternative forms of regulation, it clearly articulated its desire that an amendment to § 69 not repeal the "just and reasonable rates" standard. In *In re Regulation of Firms, Including Current Telecommunications Providers and Cable Television Firms, Which May Provide Local Exchange and Exchange Access Service In Maryland In Future,* 85 Md. PSC 187, 1994 WL 810629 (1994), the Commission wrote:

> "In order to eliminate any questions or doubts about the scope of our authority, we favor a simple legislative amendment to Article 78 which makes clear the authority of the Commission to consider alternative to rate base/rate of return methodology in determining just and reasonable rates for any public service company.

> \* \* \*

> "[W]e note that [t]he PSC Law currently sets the very broad policy of enabling the Commission to 'determine just

---

reasonable rates, in accordance with the provisions of this article, for the utility services rendered by it." This section is now PUC Article, § 4–201.

and reasonable rates of public service companies . . .' (Art. 78, Section 68(a)). The purpose of our directive to [Bell Atlantic] to submit draft legislation and our consideration of the same is not to change this broad standard but instead to redefine 'just and reasonable rates' to include something other than rate base/rate of return."

*Id.* at 210, 1994 WL 810629.

While the process of statutory construction is straight forward and requires resort only to the words of the statute when the statute is clear and unambiguous, *State Dept. of Assessments and Taxation v. Maryland–National Capital Park and Planning Comm'n*, 348 Md. 2, 13, 702 A.2d 690, 696 (1997); *Chesapeake and Potomac Telephone Co. of Maryland v. Director of Finance for Mayor and City Council of Baltimore*, 343 Md. 567, 579, 683 A.2d 512, 517 (1996), something more is required when the statute is ambiguous. *Blitz v. Beth Isaac Adas Israel Congregation*, 352 Md. 31, 39, 720 A.2d 912, 916 (1998). Where the meaning of the plain language of the statute, or the language itself, is unclear, "we seek to discern legislative intent from surrounding circumstances, such as legislative history, prior case law, and the purposes upon which the statutory framework was based." *Lewis v. State*, 348 Md. 648, 653, 705 A.2d 1128, 1131 (1998). *See also Haupt v. State*, 340 Md. 462, 471, 667 A.2d 179, 183 (1995). We are also required to interpret the statute as a whole, for "[w]here the statute to be construed is a part of a statutory scheme, the legislative intention is not determined from that statute alone, rather it is to be discerned by considering it in light of the statutory scheme." *GEICO v. Insurance Com'r*, 332 Md. 124, 132, 630 A.2d 713, 717 (1993). *See Gordon Family Partnership v. Gar on Jer*, 348 Md. 129, 138, 702 A.2d 753, 757 (1997); *Popham v. State Farm Mutual Insurance Company*, 333 Md. 136, 148, 634 A.2d 28, 34 (1993). Moreover, neither the words in the statute nor any portion of the statutory scheme should be read "so as to render the other, or any portion of it, meaningless, surplusage, superfluous, or nugatory." *GEICO*, 332 Md. at 132, 630 A.2d at 717. *See also DeBusk v. Johns Hopkins*, 342 Md. 432, 445, 677 A.2d 73, 79 (1996); *Schlossberg*

*v. Citizen's Bank,* 341 Md. 650, 660, 672 A.2d 625, 629–630 (1996); *State v. Pagano,* 341 Md. 129, 134, 669 A.2d 1339, 1341 (1996); *In Re Roger S.,* 338 Md. 385, 394, 658 A.2d 696, 700 (1995). Nor should we read a statute in a way that is inconsistent with, or ignores, common sense or logic. *Frost v. State,* 336 Md. 125, 137, 647 A.2d 106, 112 (1994).

 Under the plain meaning § 69(e), the Commission is authorized to regulate telephone companies using alternative forms of regulation, *"notwithstanding* any provisions of § 69(a) or *any other provision of law to the contrary."* Among such alternative forms of regulation is the instant price cap plan.[7] Section 69(a) requires a traditional rate analysis to be made from a specified comparison of costs, rates and profits to determine just and reasonable rates. Indeed, it defines "just and reasonable rates" in just those terms. Thus, the criteria enumerated in § 69(a) to guide evaluation of justness and reasonableness does not apply when the Commission regulates a telephone company by means different from the traditional rate-of-return methodology.

 Whether § 68(a) falls within the category of "any other provision of law to the contrary" is the critical question to be resolved by this Court. The Commission suggests, but does not actually argue, that the requirement of § 68(a), that "[t]he Commission shall have the power to determine just and reasonable rates of public service companies," does not apply when the rates are set pursuant to the alternative forms of regulation permitted by the provisions of § 69(e). This, of course, is not so because § 68(a) merely requires the Commission to set "just and reasonable" rates; it does not prescribe the specific criteria to be used for the determination, and evaluation, of the justness and reasonableness of those rates. As People's Counsel correctly observes, the "just and reasonable" standard has been incorporated into the Public Service

---

7. Section 69(e) also provides for a rate of return analysis. Adoption of a rate case regulatory scheme under § 69(e) presumably frees the Commission from complying with the very specific and strict requirements of § 69(a).

Commission Laws since the establishment of the Commission in 1910. *See* 1910 Md. Laws, ch. 180, § 13, entitled "Safe and Adequate Service: Just and Reasonable Charges: Excessive Charges Prohibited." Section 69(a) with its definition of "just and reasonable" in the context of a rate-of-return analysis was added in 1955. *See* 1955 Md. Laws, ch. 441.[8] Hence, § 68(a) stood alone, without § 69(a), from 1910 to 1955.

Section 69(a) provides the definition of "just and reasonable" that § 68(a) lacked. That definition, however, is for the traditional mode of telecommunication regulation: rate base/rate-of-return. It has no applicability to alternative modes of regulation such as price or revenue regulation. The definition of "just and reasonable rates" applicable to alternative forms of regulations, that is, what is required to be shown or the result that these alternative forms of regulation are expected to achieve, is prescribed in § 69(e). That section, as we have seen, provides that the Commission must determine that the alternate form of regulation chosen produce "affordable and reasonably priced basic local exchange service, as defined by the Commission." "Affordable and reasonably priced basic local exchange service" under § 69(e) is the equivalent of the "just and reasonable rates" the Legislature mandated under § 68(a). Thus, the Legislature has effectively left the definition of "affordable and reasonably priced," the meaning of "just and reasonable" under a non-rate base regime, to the Commission. Thus, rather than the two concepts being contradictory, they are consistent, if not complementary. Indeed, and in point of fact, they must be presumed to have been intended by the Legislature to be consistent. Had the Legislature intended otherwise, it easily could have so stated, as it did expressly with respect to the inapplicability of § 69(a) to § 69(e).

---

**8.** When initially enacted, in 1955, the definition was codified as § 62(a). Subsequently, in 1959, we amended the definition to exempt "carriers of inflammables." It was, at that point, codified as § 69(a) in Chapter 545 of the Laws of 1959.

The concept of just and reasonable rates is the cornerstone of the regulation of public utilities in Maryland. Section 68(a) defines the general powers of the Commission in terms of determining only "just and reasonable rates of public service companies." Even the public service companies, under § 28(d), have an "affirmative duty" to charge the "just and reasonable rate" determined by the Commission. *See Baltimore Gas and Elec. Co.*, 305 Md. at 150, 501 A.2d at 1309. These mandates clearly remain unchanged by the 1995 legislation enacting § 69(e).

People's Counsel contends that the Commission's application of § 69(e) in Order No. 73011 violates the "substantive due process rights" of Maryland residential customers. People's Counsel explains:

"Excessive prices for regulated telecommunication services used by over 97% of Maryland households, and (it is safe to assume every business) clearly has an economic impact. The stated basic premise of [section] 69(e), that the [Commission] is authorized to continue regulating telephone companies using alternative means as long [as] consumers are still protected, is ignored when the [Commission] sets rates that are not subject to the 'just and reasonable' standard. Such action is arbitrary and offensive to a legislative policy that demands just, reasonable, affordable and reasonably-priced basic telephone service. *Setting inflated rates and unilaterally eliminating an important test designed to protect consumers from excessive rates is not rationally related to the State's interest in exercising its police powers to protect the public interest, enforce its valid statutes and protect regulated utility consumers.*"

(emphasis supplied). People's Counsel cites no legislative history or other authority to support this argument and we are not persuaded by it.

Article 24 of the Maryland Declaration of Rights [9] and the "Due Process" clause of the Fourteenth Amendment

---

9. Article 24, Due process, of the Maryland Declaration of Rights, provides:

to the United States Constitution [10] ensure that governmental actions, particularly legislative enactments, must meet the requirements of substantive due process. In *Bowie Inn v. City of Bowie,* 274 Md. 230, 236, 335 A.2d 679, 683 (1975), for example, this Court rejected a "substantive due process" challenge, similar to the one advanced in the case *sub judice,* to economic regulatory legislation. There, we emphasized that "[t]he wisdom or expediency of a law adopted" by a legislative body "is not subject to judicial review, and the law will not be held void if there are any considerations relating to the public welfare by which it can be supported." *Id.* at 236, 335 A.2d at 683 (citing *Dawson v. State,* 329 Md. 275, 283–284, 619 A.2d 111, 115 (1993); *see also Ogrinz v. James,* 309 Md. 381, 394–395, 524 A.2d 77, 84 (1987); *Montgomery County v. Fields Road,* 282 Md. 575, 583–585, 386 A.2d 344, 348–349 (1978); *Edgewood Nursing Home v. Maxwell,* 282 Md. 422, 426–427, 384 A.2d 748, 751 (1978); *Governor v. Exxon Corp.,* 279 Md. 410, 423–429, 370 A.2d 1102, 1110–1113 (1977), *aff'd,* 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978); *Westchester West No. 2 v. Montgomery Co.,* 276 Md. 448, 454–455, 348 A.2d 856, 860 (1975)). *See also General Motors Corp. v. Romein,* 503 U.S. 181, 112 S.Ct. 1105, 1112, 117 L.Ed.2d 328, 340 (1992); *Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Williamson v. Lee Optical Inc.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Also, "[o]ne who attacks a statute on due process grounds bears the burden of proving the absence of such a basis, viz., that it does not bear a real and substantial relationship to the governmental object

---

"That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

**10.** "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

sought to be attained." *Comprehensive Accounting Service Co.,* 284 Md. at 483–484, 397 A.2d at 1024–1025. *See also Rucker v. Comptroller of Treasury,* 315 Md. 559, 567, 555 A.2d 1060 (1989); *Maryland Bd. of Pharmacy v. Sav–A–Lot,* 270 Md. 103, 311 A.2d 242 (1973); *Salisbury Beauty Schools v. State Bd. of Cosmetologists,* 268 Md. 32, 300 A.2d 367 (1973).

■■■ Here, there is no dispute that § 69(e) was enacted to achieve three legitimate goals: (1) provide price and quality protection for Maryland customers, (2) encourage the development of competition in the regulated telecommunications industry, and (3) protect the public interest. To achieve these goals, the Legislature authorized the Commission to regulate telephone companies "by means of alternative forms of regulation, which may include, but [are] not limited to, the use of price regulation, revenue regulation, ranges of authorized return, rate of return, categories of services, or price indexing." These alternative forms of regulation must produce "affordable and reasonably priced local exchange service, as defined by the Commission." There is no question that these alternative forms of regulation are intended to achieve the goals enumerated and that they are, therefore, rationally related to achievement of those objectives.[11] "[S]etting inflated rates and unilaterally eliminating an important test designed to protect consumers from excessive rates," as correctly argued by People's Counsel, clearly are not the means by which the Legislature intended to achieve the stated objectives of § 69(e).

People's Counsel nevertheless maintains that, in promulgating Order No. 73011, the Commission made arbitrary and irrational decisions in several confusing ways, in violation of

---

11. The Commission stated in Order No. 73011:

"The price cap regulation we adopt today is authorized specifically in Section 69(e) of [t]he PSC Law. We find that our plan protects consumers by producing affordable and reasonably priced basic local exchange service. Our plan also ensures the quality, availability, and reliability of telecommunications services throughout the State, encourages the development of competition and is in the public interest."

the substantive, *not* procedural, due process rights of Maryland telephone customers. More particularly, as we understand the arguments, it contends:

(1) The Commission "interpreted away" § 68(a) without informing the public it had done so until the Order was subject to judicial review;

(2) The Commission adopted "a facially inadequate definition of the 'affordable and reasonably priced' standard" in § 69(e);

(3) Without any analysis concerning the manner in which that decision was reached, the Commission arbitrarily set "going in" rates at levels $100–200 million above the ratio that would have been set under rate of return regulation. Specifically, the People's Counsel asserts that the Commission failed to explain:

 (a) How § 69(e) and the "affordable and reasonably priced" standard applied; and

 (b) Why the rates authorized by the Commission are "just and reasonable"; and

(4) The Commission deviated from its previous published pronouncements, made during the process of amending § 69 and the adjustment of Bell Atlantic's rates when the OPEB amortization was complete, relating to the retention of the "just and reasonable rates" standard.

None of these arguments has merit.

People's Counsel argues that "[t]o have received substantive due process in this proceeding, Maryland residential telephone customers . . . were entitled to notice from the [Commission] of the appropriate administrative standards that would be applied in reaching a decision." A quasi-judicial administrative process should be totally transparent, it continues, and "[no party] should be required to guess what standards will be applied or what reasoning the [Commission] actually used to reach it final conclusions." This argument, similar to some of the aforementioned arguments made by People's Counsel, concerns the Commission's position that rates determined pursuant to § 69(e)—by a means different than the traditional

rate-of-return analysis—are not required to be "just and reasonable" under either § 68(a) or § 69(a). As earlier stated, the rates determined by the Commission using the alternative means of regulation authorized under § 69(e) are subject to the just and reasonable standard prescribed by § 68(a), but not § 69(a). And, in this instant case, the Commission deliberately applied § 69(e) and, thus, there was yielded, in the judgment of PSC, a "just and reasonable rate" under § 68(a), which was not arbitrary. That is the standard that, as we have seen, People's Counsel maintains is applicable to the Commission's decision.

 Another argument advanced by People's Counsel is that, although the Legislature specifically authorized the Commission to define "affordable and reasonably priced local exchange service," the definition the Commission settled on was arbitrarily determined and applied. In arriving at the definition of the phrase, the Commission reasoned that Bell Atlantic's current telephone rates met the "affordable and reasonably priced" requirement of 69(e) because: (1) more than 97% of Maryland households currently have telephone service, and (2) existing other-than-competitive ("OTC") rates are lower than they were in 1985. People's Counsel disagrees with the Commission's definition, arguing that (1) there is a difference between "affordability" and "reasonably priced," thus, each term should be defined separately, (2) the number of households with telephone service is not an adequate indicator of affordability, telephones now being a necessity that almost everyone has whether they can afford them or not, and (3) the fact that existing rates are lower in dollar terms than they were in 1985 cannot establish that local exchange is reasonably priced because existing rates have not been adjusted to reflect the changes in Bell Atlantic's cost of service. In addition, well aware of this Court's limited review when the Legislature has specifically left a matter to the determination of a governmental agency with expertise, People Counsel points out that it is not arguing for the Commission to adopt its analysis of "affordability" or "reasonably priced," but only that "some rational analysis" be adopted and applied by the Commission.

As we see it, however, People's Counsel's challenge to the Commission's definitions is, in addition to being based on a disagreement with the definitions themselves, a continuing attempt to infuse factors usually considered in the traditional rate of return analysis of § 69(a) into the Commission's newly-adopted price cap regulation under § 69(e).[12] In arriving at its definition of "affordability and reasonably priced" the Commission properly exercised its discretion, as authorized by the General Assembly. Its exercise was neither arbitrary nor unreasonable. Indeed, contrary to People Counsel's contention, the Commission's findings are supported by "rational analysis." [13]

"As previously described, Staff and OPC proposed adjustment to [Bell Atlantic's] OTC [14] revenue requirement prior to the initiation of (or 'going-in' to) a price cap plan. [Bell Atlantic], conversely, contends that existing OTC rates should be the starting point for the price cap plan.

"We understand Staff's and OPC assertions that, based on traditional rate base/rate of return ratemaking methodologies, [Bell Atlantic's] rates should be reduced. However, underlying their assertions is the assumption that the only appropriate tool to measure the reasonableness of [Bell Atlantic] OTC revenue requirement is a RB/ROR approach. We find that [t]he PSC Law does not require us to adopt that assumption. Specifically, we observe that Section 69(e) of the PSC Law leaves to us the definition of 'affordable and

---

12. This is a requirement of § 69(a), which requires the Commission to consider the operating income of the public service company, "after reasonable deduction for depreciation and other necessary and proper expenses and reserves" Article 78, § 69(a).

13. The PSC Law, Art. 78, § 85(a), provides:
 " **§ 85. Decisions and orders.**
 "(a) *To be based on record, in writing and state grounds.*—Every decision and order of the Commission in any contested proceeding shall be based upon a consideration of the record, shall be in writing and shall state the grounds for the Commission's conclusions."

14. OTC or "other-than-competitive" services are those that, unlike competitive services, can not be market-priced.

reasonably priced basis local exchange service.' While the reasonableness of OTC service rates certainly could be determined utilizing a RB/ROR approach, it is neither the only nor the best approach.

"After considering the evidence and arguments presented on this issue, we find that it is reasonable to utilize [Bell Atlantic's] existing OTC rates, except access rates, as we initiate price cap regulation. In doing so, we find that since so many Maryland households currently have telephone service at existing rate levels (in excess of 97 percent), and since existing OTC rates actually are lower now than they were in 1985, current OTC rates are reasonable. Moreover, since the OTC rates set herein will be in effect for an extended period of time, we find it is reasonable to utilize a broader and more forward-looking measure of rate reasonableness than can be attained through an examination and matching of Company's rate base, revenues and expenses. Additionally, a broader measure of rate reasonableness also is justified by the competitive incursions into some and eventually all of [Bell Atlantic's] OTC service offerings that we can expect in the years ahead."

Order at 90–91.

People Counsel argues that the Commission failed to provide a "comprehensive analysis" concerning the manner in which its decision was reached and, specifically, *how* the "affordable and reasonably priced" standard applied and *why* the rates settled upon are "just and reasonable."[15] We are not persuaded by these arguments. As we have stated in prior opinions, judicial review of an administrative agency's finding is "limited to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Baltimore Gas & Electric,* 273 Md. at 363, 329 A.2d at 695 (citing *Insurance Comm'r v. National Bureau,* 248 Md. 292, 309–310,

---

**15.** *See supra* at 21, holding that "affordable and reasonably priced basic local exchange service" finding establishes "just and reasonable rates" standard that the Commission is specifically required, § 68(a), to meet.

236 A.2d 282, 291–292 (1967)). *See also Potomac Edison v. Public Service Commission,* 279 Md. 573, 581, 369 A.2d 1035, 1040–41 (1977). "[t]he burden is on those who seek to set it aside on appeal to show by clear and satisfactory evidence that there is illegality or unreasonableness" *Baltimore Gas & Electric Co. v. McQuaid,* 220 Md. 373, 387, 152 A.2d 825, 832 (1959). Here, the findings of the Commission are clearly reasonable and, equally as clear, People Counsel has failed to show that the findings are arbitrary.

People's Counsel's final argument in support of its contention that the Commission engaged in arbitrary decision-making is that the Commission retracted two "regulatory promises" it made in *Re C & P Telephone of Maryland,* 84 Md. PSC 135, 1993 WL 667164 (1993). The first promise, People's Counsel alleges, was that the Commission would thoroughly review Bell Atlantic's rates to ensure that they remained "just and reasonable" after permitting a period of experimental pricing, incentive concepts and profit sharing to develop.

The Commission also made promises, People's Counsel continues, concerning changes in the accounting of the other post-employment benefits ("OPEB") and transitional benefit obligations ("TBO"). According to People's Counsel, in *Re C & P Telephone of Maryland,* 84 Md. PSC at 140–42, 1993 WL 667164, "[t]he Commission allowed [Bell Atlantic] to shorten the period for the amortization of OPEB expenses from 16½ years to 6 years (amortization began in 1991) and use excess profits that otherwise would have been returned to ratepayers (under the then-existing 'profit sharing' regulatory scheme) to payoff the OPEB amortization expense at a faster rate." After the OPEB obligation was fully amortized in 1996, however, the Commission failed to reduce rates and instead continued a fictitious $59 million expense to be built into Bell Atlantic's rate base, while the Company no longer incurred such expense. As evidence of this "regulatory promise," People's Counsel points to the Commission's 1993 ruling:

"Having considered the arguments raised by OPC and Staff, ... we continue to believe that accelerated amortization of the OPEB obligation will serve the ratepayers' interests as well as the Company's interest.

"A key element of concern expressed by OPC and Staff is that, after the rapid amortization of the OPEB transition obligation is completed, the rates paid by customers will be excessive and C & P will be the beneficiary of inflated earnings....

"The concerns of OPC and Staff are misplaced because Staff and OPC have ignored the Commission's expressed intent to institute a proceeding after a three-year period."

*Re C & P Telephone Co.*, 84 Md. PSC at 243, 1993 WL 667178.

People's Counsel argues that it relied on and made decisions based upon the Commission's statements that it would review rates in 1996 and that the OPEB TBO amortization, while costing customers in the short run, would benefit customers in the long run through a hybrid profit-sharing/rate-of-return form of regulation. Instead, People's Counsel maintains, the Commission arbitrarily adopted a "new direction without any analysis showing why the OPEB expenses should not be removed."

In response, the Commission does not dispute the facts stated by People's Counsel. Rather, it simply argues that "[t]here is no basis in law for the argument that a prior regulatory decision must be continued despite the intervening enactment of a new statute." The passage of § 69(e), the Commission contends, disrupted its "prior regulatory promise" to determine rates using the traditional rate-of-return regulation. This change of form of regulation, as authorized by the Legislature in § 69(e), permitted the Commission to implement new policies and to make "adjustments," including the termination of any "ongoing regulatory treatments." Once the Commission decided, pursuant to § 69(e), that an alternative method of regulation would better serve the public interest, it was no longer required to factor OPEB adjustments

into its analysis, as that consideration is part of rate-of-return regulation, not price cap regulation.

Despite the Commission's claim that § 69(e) *permitted* it to change forms of regulation and to implement new policies, it is clear that the Commission did not have to renege on its acknowledged "regulatory promises." Section 69(e), however, gave the Commission an option to adopt methods of regulation that it was previously unable to implement. These alternative means of regulation made it impracticable for the Commission to use OPEB adjustments in its analysis. In any event, as the Commission said, its actions "may well have frustrated OPC's expectations, but it denied no legally protected interest in doing so."

**JUDGMENT OF THE CIRCUIT COURT FOR WICOMI-CO COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**