*Washington Gas Light Company v. Maryland Public Service Commission, et al.*, No. 81, September Term, 2017.  Opinion by Getty, J.

**PUBLIC UTILITIES – MARYLAND CODE, PUBLIC UTILITY ARTICLE § 4-210 – STATUTORY INTERPRETATION**

In a case of first impression, the Court of Appeals concluded that Public Utility Article § 4-210 of the Maryland Code, known also as the STRIDE statute, is unambiguous and requires that "gas infrastructure improvements" be located "in the State" in order to promptly recover investment costs separate from base rate proceedings.  Additionally, the Court of Appeals's independent examination of the applicable legislative history supported its plain language interpretation.  As such, the Court of Appeals affirmed the judgment of the Court of Special Appeals.

Circuit Court for Montgomery County
Case No. 407503V
Argued: May 7, 2018

IN THE COURT OF APPEALS
OF MARYLAND

No. 81

September Term, 2017

_____

WASHINGTON GAS LIGHT COMPANY

v.

MARYLAND PUBLIC SERVICE
COMMISSION, ET AL.

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Getty, J.

_____

Filed: August 14, 2018

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Bessie Decker, Clerk
April 20, 2018

> **Legislative intent**
>
> (b) It is the intent of the General Assembly that the purpose of this section is to accelerate gas infrastructure improvements in the State by establishing a mechanism for gas companies to promptly recover reasonable and prudent costs of investments in eligible infrastructure replacement projects separate from base rate proceedings.
>
> —Statement of "Legislative Intent," Senate Bill 8, 2013 Md. Laws, ch. 161, § 1.

In this appeal, we are asked to interpret Public Utility Article ("PU") § 4-210 of the Maryland Code, known also as the STRIDE statute.[1]  In short, the STRIDE statute allows Maryland gas companies more timely cost recovery if they submit plans that increase the pace of natural gas infrastructure improvements.

The General Assembly passed the STRIDE statute (Senate Bill 8) in response to increasing concerns about threats to public safety posed by aging and deteriorating gas infrastructure throughout the state.[2]  The Fiscal and Policy Note for Senate Bill 8 highlighted the occurrence of "30 'significant [pipeline] incidents' in Maryland from 2002 through 2011, totaling $12 million in property damage and causing one fatality and 16

---

[1] STRIDE is an acronym for "Strategic Infrastructure Development and Enhancement." *Maryland Off. of People's Counsel v. Md. Pub. Serv. Comm'n*, 226 Md. App. 483, 491 (2012).

[2] Gas explosion cases have come before this Court typically on legal issues of negligence and damages.  *See Crews v. Hollenbach*, 358 Md. 627, 633 (2000); *Dudley v. Baltimore Gas & Elec. Co.*, 98 Md. App. 182, 186 (1993); *Frenkil v. Johnson, to Use of National Retailers Mut. Ins. Co.*, 175 Md. 592, 596–98 (1939); *Consolidated Gas Co. v. Getty*, 96 Md. 683 (1903).

injuries." Dep't Leg. Servs., *Fiscal and Policy Note, Senate Bill 8*, at 6 (2013 Session) (hereinafter cited as "Senate Bill 8 Fiscal Note"). To underscore the importance of providing Maryland residents with a safe and reliable gas distribution infrastructure throughout the State, the legislature codified a rarely used express statement of legislative intent. *See* PU § 4-210(b).

Petitioner Washington Gas Light Company ("Washington Gas") asserts that the Maryland Public Service Commission ("the Commission"), the Circuit Court of Montgomery County, and the Court of Special Appeals each erred in their statutory analysis, from which they ultimately concluded that the STRIDE statute provides accelerated cost recovery only for gas infrastructure projects located in the State of Maryland. Respondents Maryland Office of People's Counsel ("OPC")[3] and the Commission argue that the prior tribunals' interpretation of PU § 4-210 was correct. We are therefore called upon to conduct statutory interpretation, analyzing both the plain language and the legislative history of PU § 4-210.

For the following reasons, we conclude that PU § 4-210 is unambiguous and requires that "gas infrastructure improvements" be located "in the State" in order to promptly recover investment costs separate from base rate proceedings. We also hold that

---

[3] OPC, an independent agency of the Commission, "appear[s] before the Commission and courts on behalf of residential and noncommercial users in each matter or proceeding over which the Commission has original jurisdiction, including a proceeding on the rates, service, or practices of a public service company[.]" *Md. Off. of People's Counsel*, 226 Md. App. at 489 (quoting PU[] § 2–204(a)(2)).

the STRIDE statute's legislative history supports this interpretation. Accordingly, we affirm the judgment of the Court of Special Appeals.

## BACKGROUND

### A. *The Parties*

Washington Gas is a public service company that provides natural gas and delivery services to customers in the Maryland counties of Montgomery, Prince George's, Charles, Calvert, St. Mary's, and Frederick, as well as customers in Washington, D.C. and jurisdictions in Virginia. To transport natural gas to its customers, Washington Gas operates a system of distribution pipelines spanning its geographic service area throughout Maryland, Virginia, and Washington, D.C.

The Commission is tasked with regulating Maryland public service companies, including Washington Gas, and its duties are summarized in *Maryland Off. of People's Counsel v. Md. Pub. Serv. Comm'n*:

> The Maryland Public Service Commission is an independent unit in the executive branch of State government (PU[] § 2–101(b)), with jurisdiction over public service companies that operate utility businesses within the State. PU[] § 2–112(a). The Commission's primary duties are to "supervise and regulate" the companies subject to its jurisdiction[,] to "ensure their operation in the interest of the public[,]" and to "promote adequate, economical, and efficient delivery of utility services in the State without unjust discrimination [.]" PU[] § 2–113(a)(1)(i).

226 Md. App. at 488. The statutory authority for the Commission's regulation of public service companies is provided in Title Four of the Public Utilities Article.

Washington Gas has a duty to "charge just and reasonable rates for the regulated services that it renders," PU § 4–201, and the Commission retains "the power to set a just

3

and reasonable rate of a public service company[.]" PU § 4–102(b). Generally, the Commission determines just and reasonable rates for a public service company by accounting for the company's "income and expenses during a test year, calculating the rate base (the fair value of the property used and useful in rendering service) during that year, determining the utility's cost of capital (its required rate of return), and then multiplying that rate of return against the rate base." *Bldg. Owners & Managers Ass'n of Metro. Baltimore, Inc. v. Pub. Serv. Comm'n of Maryland*, 93 Md. App. 741, 753 (1992). The Commission may order an adjustment in the company's rates if the utility's level of income deviates significantly from the test year's net income. *See id.* Importantly, prior to the enactment of the STRIDE statute, a public service company would recover the costs of investment in infrastructure improvements through distribution rates, determined with the Commission, *after the work was completed*. PU § 4-101(3) (defining "just and reasonable rate" as "a reasonable rate on the fair value of the public service company's property *used and useful in providing service to the public*." (Emphasis added)).

## B. The STRIDE statute – PU § 4-210

Beginning in 2011, the General Assembly considered legislation to accelerate replacement of aging gas infrastructure and allow cost recovery separate from base rate proceedings. *See* S.B. 8, 2013 Reg. Sess. (cross-filed as H.B. 89); S.B. 541, 2012 Reg. Sess. (cross-filed as H.B. 662); S.B. 332, 2011 Reg. Sess. (cross-filed as H.B. 856). On February 22, 2013, the General Assembly enacted a bill titled "An Act Concerning Gas Companies—Rate Regulation—Infrastructure Replacement Surcharge," the STRIDE

4

statute, creating an exception to the normal ratemaking process. The law took effect on June 1, 2013. 2013 Md. Laws, ch. 161, § 2.

The STRIDE statute created § 4-210 of the Public Utilities Article. To increase the pace of natural gas infrastructure improvements, promote public safety, and enhance gas pipeline system reliability, the General Assembly created incentives for public service companies to submit STRIDE-compliant infrastructure plans, which would receive more timely cost recovery than would otherwise be available under the traditional rate setting process. Pursuant to the STRIDE statute, a public service company may file "a plan to invest in eligible infrastructure replacement projects" with the Commission accompanied by "a cost-recovery schedule . . . that includes a fixed annual surcharge on customer bills to recover reasonable and prudent costs" of those projects. PU § 4–210(d)(1). An "eligible infrastructure replacement" project is defined as "a replacement or an improvement in an existing infrastructure of a gas company." PU § 4–210(a)(3).

Further, an "eligible infrastructure replacement" project: "(i) is made on or after June 1, 2013; (ii) is designed to improve public safety or infrastructure reliability; (iii) does not increase the revenue of a gas company by connecting an improvement directly to new customers; (iv) reduces or has the potential to reduce greenhouse gas emissions through a reduction in natural gas system leaks; and (v) is not included in the current rate base of the gas company as determined in the gas company's most recent base rate proceeding." *Id.* A STRIDE plan filed by a public service company must include: "(i) a time line for the completion of each eligible project; (ii) the estimated cost of each project; (iii) a description

5

of customer benefits under the plan; and (iv) any other information the Commission considers necessary to evaluate the plan." PU § 4–210(d)(2).

Unlike most legislation, the STRIDE statute included a statement of legislative intent: "It is the intent of the General Assembly that the purpose of this section is to accelerate gas infrastructure improvements in the State by establishing a mechanism for gas companies to promptly recover reasonable and prudent costs of investments in eligible infrastructure replacement projects separate from base rate proceedings." PU § 4–210(b). If the Commission approves a proposed infrastructure project under the STRIDE statute, a public service company may recover costs through a fixed annual surcharge that is collectible while the approved work is being performed. *See* PU § 4-210(d)(3).

## C. Legal Proceedings

Washington Gas filed a STRIDE plan with the Commission on November 7, 2013, that was approved by the Commission. PU § 4-210(d). The proposed 2013 STRIDE plan consisted of four distribution system replacement programs, all of which were located within the company's Maryland service territory. Subsequently on March 10, 2015, Washington Gas filed an application for approval of a proposed amendment to add four new transmission system programs. While the majority of the assets included in the amended application were physically located in Maryland, three proposals contained individual projects located outside of Maryland. Specifically, Transmission Program 1 contained two projects replacing pipeline in Virginia, Transmission Program 2 contained four infrastructure replacement projects in Virginia, and Transmission Program 4 contained six replacement projects in Virginia or Washington, D.C.

6

The Commission was required to approve or deny the amended application within 150 days of the amendment's filing. PU § 4-210(e)(2). The Commission deferred its decision and delegated the matter to a public utility law judge on March 16, 2015. PU § 3-104(d)(1). The Commission staff and the OPC intervened in the proceeding before the public utility law judge, then-Chief Judge Terry J. Romine.

An evidentiary hearing was held on April 29, 2015, and initial and reply briefs were filed on May 14 and May 21, 2015, respectively. The parties mainly disputed whether Washington Gas could recover costs for infrastructure replacement projects located outside of Maryland through the STRIDE statute. Washington Gas contended that since Maryland customers would benefit from the improvements located outside of Maryland, PU § 4-210 permitted STRIDE cost recovery on those out-of-state assets. On May 27, 2015, Chief Judge Romine issued an order, concluding that for "an infrastructure replacement project to be an 'eligible infrastructure replacement' under the STRIDE law," and thus qualifying for accelerated cost recovery associated with the project through the STRIDE surcharge mechanism, the project "must be located on pipeline system located in the State and subject to the Commission's jurisdiction." Further, Chief Judge Romine stated that the STRIDE statute "is clear and unambiguous; the incentive for cost recovery outside a base rate proceeding is available to 'accelerate gas infrastructure improvements in the State.'" Since Transmission Programs 1, 2, and 4 included infrastructure located outside of Maryland, Chief Judge Romine denied STRIDE cost recovery for the out-of-state portions of the amended STRIDE plan. Washington Gas appealed the order to the full Commission,

7

arguing that the company should be entitled to accelerated recovery of costs for parts of the projects not located in the State of Maryland.  PU § 3-113(d)(2)(i).

In a July 2, 2015 order, the full Commission affirmed Chief Judge Romine's legal analysis, determining that Washington Gas may not recover costs associated with out-of-state projects under the STRIDE statute and that recovery was limited to improvements physically located in Maryland.  The full Commission found that "PU § 4-210(b) of the STRIDE Law clearly expresses the legislative intent behind the statute" and "[t]o interpret § 4-210(b) any other way would be contrary to accepted principles of statutory construction, and would render the words 'in the State' meaningless."  The Commission concluded that that:

> [t]he Company may include the appropriate Maryland-allocated share of out-of-state projects in the rate base in its next rate case, as has been the Company's practice, but there is no basis to accelerate cost recovery for improvements that the General Assembly did not intend to make eligible under the STRIDE [statute].

Washington Gas then petitioned for judicial review of the Commission's decision to the Circuit Court for Montgomery County on July 30, 2015.  PU § 3-201(b).  After holding a hearing, the Honorable Joseph M. Quirk entered an order and accompanying opinion on March 23, 2016 denying the petition for judicial review and affirming the final order of the Commission.  Judge Quirk concluded that the legislative intent section of the STRIDE statute is unambiguous and dispositive of the issue.  Additionally, Judge Quirk stated that the adoption of Washington Gas's argument would "cause [the] STRIDE[] [statute's] narrow exception to the normal ratemaking process to swallow the rule, effectively permitting concurrent recovery of costs incurred by gas companies if the public

8

utility could show that the utility company actions had *any* bearing on Maryland's overall infrastructure safety." (Emphasis in original).

Washington Gas appealed to the Court of Special Appeals. The Court of Special Appeals examined both the plain text and legislative history of PU § 4-210. *Washington Gas Light Co. v. Md. Pub. Serv. Comm'n*, 234 Md. App. 367, 382–88 (2017). Ultimately, the Court of Special Appeals determined that the Commission's interpretation, and the circuit court's affirmance, of the STRIDE statute and its legislative intent was correct because the relevant language is unambiguous. *Id.* at 384. Similar to the circuit court's reasoning, the Court of Special Appeals held that adopting Washington Gas's argument would lead to "a very subtle and very forced construction" in order "to support a judicial conclusion that the Legislature's unambiguously expressed intention that the STRIDE law permits accelerated cost recovery only for infrastructure improvements in Maryland to mean that the General Assembly also intends the law to extend to improvements that are located outside of this state." *Id.* While the Court of Special Appeals found the plain language of the STRIDE statute unambiguous, it also analyzed the legislative history of the STRIDE statute as a "check" on its plain language interpretation. *Id.* at 384–85. Although the Court of Special Appeals recognized that nothing in the legislative history led "ineluctably to the conclusion that the General Assembly intended that the STRIDE law should apply only to projects located in Maryland[,]" it also noted that the legislative history did not "suggest that the legislators, stakeholders, or anyone else who was a part of the discourse surrounding the STRIDE law considered it to be a mechanism for accelerated cost recovery for improvements made outside of the state." *Id.* at 387. For these reasons,

9

the Court of Special Appeals agreed with the Commission's interpretation and affirmed the circuit court's judgment. *Id.* at 388.

Washington Gas then petitioned this Court for a writ of *certiorari*, which we granted on February 5, 2018. *Washington Gas Light Co. v. Md. Pub. Serv. Comm'n*, 457 Md. 400 (2018). Focusing on statutory interpretation of PU § 4-210, we now consider whether the STRIDE statute provides for accelerated recovery of costs for portions of projects outside of Maryland.

## STANDARD OF REVIEW

Consistent with our review of decisions by other administrative agencies, we review the Commission's decision rather than the decisions of the circuit court or the Court of Special Appeals. *Md. Off. of People's Counsel*, 226 Md. App. at 500. The Public Utilities Article of the Maryland Code specifically includes the standard of review applicable to a decision by the Commission:

> Every final decision, order, or regulation of the Commission is *prima facie* correct and shall be affirmed unless clearly shown to be: (1) unconstitutional; (2) outside the statutory authority or jurisdiction of the Commission; (3) made on unlawful procedure; (4) arbitrary or capricious; (5) affected by other error of law; or (6) if the subject of review is an order entered in a contested proceeding after a hearing, unsupported by substantial evidence on the record considered as a whole.

PU § 3-203. However, this Court has expanded on the scope of review mandated by the Public Utilities Article by noting that a decision of the Commission:

> will not be disturbed on the basis of a factual question except upon clear and satisfactory evidence that it was unlawful and unreasonable. Such a decision is accorded the respect due an informed agency that is aided by a competent and experienced staff. Questions of law, however, are "completely subject

10

to review by the courts." This is consistent with the standard of review applicable to administrative agencies generally.

*Town of Easton v. Pub. Serv. Comm'n of Maryland*, 379 Md. 21, 30 (2003) (quoting

*Cambridge v. Eastern Shore Pub. Serv. Co.*, 192 Md. 333, 339 (1949)) (internal citations

omitted).

"Even when reviewing questions of law, 'the agency's interpretation of a statute

may be entitled to some deference.' However, 'that deference is, by no means, dispositive,

nor anywise as great as that applicable to factual findings or mixed questions of law and

fact.'" *Commc'ns Workers of Am. v. Pub. Serv. Comm'n of Maryland*, 424 Md. 418, 434

(2012) (quoting *People's Counsel v. Pub. Serv. Comm'n*, 355 Md. 1, 14

(1999)). Appellate courts consider several factors when evaluating an agency's

interpretation of a statute. These factors include:

> Although never binding upon the courts, the contemporaneous interpretation of a statute by the agency charged with its administration is entitled to great deference, especially when the interpretation has been applied consistently and for a long period of time. Another important consideration is the extent to which the agency engaged in a process of reasoned elaboration in formulating its interpretation of the statute. When an agency clearly demonstrates that it has focused its attention on the statutory provisions in question, thoroughly addressed the relevant issues, and reached its interpretation through a sound reasoning process, the agency's interpretation will be accorded the persuasiveness due a well-considered opinion of an expert body.

*Baltimore Gas & Elec. Co. v. Pub. Serv. Comm'n of Maryland*, 305 Md. 145, 161–62

(1986).

11

As statutory interpretation is a question of law, we may review the Commission's decision *de novo*. In doing so, this Court will conduct an independent legislative intent analysis.

## DISCUSSION

### A. *Parties' Contentions*

Washington Gas argues that the Commission, the circuit court, and the Court of Special Appeals incorrectly interpreted the STRIDE statute for three principal reasons. First, Washington Gas asserts that the Commission's interpretation of the STRIDE statute violated rules of statutory construction because the Commission did not apply the statutorily defined and unambiguous term "eligible infrastructure replacement." Washington Gas asserts that there is no dispute among the parties and the tribunals that Washington Gas met the STRIDE statute's five criteria found in PU § 4-210(a)(3) and, as such, the projects should be approved as "eligible infrastructure replacement." Second, Washington Gas argues that the Commission's reliance on the legislative intent provision, PU § 4-210(b), and its "in the State" language was misapplied because PU § 4-210(b) is a preamble. According to Washington Gas, the "sole purpose of the legislative intent provision is to guide the Court's interpretation of ambiguous terms in the controlling sections of the law." Washington Gas asserts that since the statute's five eligibility criteria are unambiguous, it was improper to combine the ambiguous legislative intent provision with the "controlling section of the law." *See Kent v. Somervell*, 7 G. & J. 265, 274 (1835). Lastly, Washington Gas argues that "even if principles of statutory construction allow a legislative intent provision to be used as a substantive part of the statute, the Commission

12

should have applied the interpretation of the legislative intent provision that is most consistent with the other, unambiguous provisions of [the] STRIDE [statute]." Washington Gas asserts that the legislative intent provision should reflect the General Assembly's desire to "accelerate projects that would result in safety and reliability improvements for Maryland gas customers" instead of imposing a geographic limitation.

Regarding legislative intent, Washington Gas concedes that STRIDE projects located outside of Maryland were not discussed or debated during the STRIDE statute's legislative hearing and floor proceedings. Further, Washington Gas notes that it assisted in the drafting of the statute and that if out-of-state projects had been broached during debate, the company's representatives would have addressed the importance of not limiting STRIDE projects based upon geographic location since Maryland customers benefit from these out-of-state projects. In summary, Washington Gas asserts that there is nothing in the legislative history which proves the Commission's interpretation that the law applies solely to projects physically located in Maryland.

The Commission's argument is straightforward: the General Assembly used explicit, unambiguous language that limited accelerated cost recovery projects to those projects physically located in Maryland. OPC agrees with the Commission's argument and further contends that the legislative intent section is an operative part of the STRIDE statute and is not a preamble. In support, OPC points to Washington Gas's repeated acknowledgement in its brief that acceleration of infrastructure replacement is a vital component of PU § 4-210 even though "accelerate," like the phrase "in the State," only appears in PU § 4-210(b). As an alternative argument, OPC asserts that even if the

13

legislative intent section is considered a preamble, a preamble is still allowed to confine the breadth of a statute if there is no conflict between the preamble and an express statutory provision. *Consolidated Real Estate and Fire Ins. Co. of Baltimore v. Cashow*, 41 Md. 59, 70–71 (1874) (holding that a preamble may "not control any express provision of the enacting part of the Statute clearly evidencing the legislative intent to give [the statute] a more extended operation" only if the intent of the enacting part of the statute is "apparent and expressed in plain language").

The Commission responds to Washington Gas's legislative intent arguments by stating that there is no evidence that the General Assembly considered infrastructure investment outside of Maryland when it passed the STRIDE statute. OPC counters Washington Gas's argument, stating that since Washington Gas helped draft the STRIDE statute, one would expect the statute to clearly support Washington Gas's current position. OPC argues that, instead, the presence of the "in the State" phrase in the STRIDE statute contradicts the legislative argument Washington Gas advances.

### B. Overview of Statutory Analysis

"We provide judicial deference to the policy decisions enacted into law by the General Assembly." *Phillips v. State*, 451 Md. 180, 196 (2017). In addition, this Court "assume[s] that the legislature's intent is expressed in the statutory language and thus our statutory interpretation focuses primarily on the language of the statute to determine the purpose and intent of the General Assembly." *Id.* This Court recently had the opportunity to reiterate the statutory interpretation process:

When conducting a statutory construction analysis, this Court's principal goal is to determine the legislative intent underlying the relevant statutes. *See Downes v. Downes*, 388 Md. 561, 571 (2005). "We begin our analysis by looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Brown v. State*, 454 Md. 546, 551 (2017).

*Shealer v. Straka*, 459 Md. 68, 84 (2018). We will not "read a statute in a way that is inconsistent with, or ignores, common sense or logic." *Md. Pub. Serv. Comm'n*, 355 Md. at 23 (citing *Frost v. State*, 336 Md. 125, 137 (1994)). Continuing our discussion of statutory interpretation in *Shealer*, we stated that:

In some instances, a reviewing court will be able to discern the legislative intent from the clear and unambiguous statutory language; nevertheless, "[o]ccasionally we see fit to examine extrinsic sources of legislative intent merely as a check of our reading of a statute's plain language." *Reger* [*v. Washington Ctny. Bd. of Ed.*], 455 Md. [68,] 96 [(2017)] (quoting *Phillips* [*v. State*], 451 Md. [180,] 196 [(2017)]). The key extrinsic source for purposes of confirming the legislative intent is often the legislative history of the pertinent statutes. *See State v. Roshchin*, 446 Md. 128, 140 (2016) ("But even when the language is unambiguous, it is useful to review legislative history of the statute to confirm that interpretation and to eliminate another version of legislative intent alleged to be latent in the language.").

*Shealer*, 459 Md. at 84.

## C. Plain Language Analysis

The plain language of the PU § 4-210(a)(3) lists five requirements that a project must meet to be considered an "eligible infrastructure replacement" and thus, be eligible for STRIDE cost recovery. PU § 4-210(a)(3) does not require a project to be located in Maryland. However, the legislative intent section at PU § 4-210(b) reads: "It is the intent of the General Assembly that the purpose of this section is to accelerate gas infrastructure improvements *in the State* by establishing a mechanism for gas companies to promptly

15

recover reasonable and prudent costs of investments in eligible infrastructure replacement projects separate from base rate proceedings." (Emphasis added).

First, we must determine whether PU § 4-210(b) is a preamble. Although Washington Gas devotes considerable effort defining "preamble" in its brief, we find the guidance in the uncited *Legislative Drafting Manual* ("the *Manual*") compelling. *See* Dep't Leg. Servs., *Legislative Drafting Manual 2013*, at 152–53 (2012), *available at* http://dlslibrary.state.md.us/publications/OPA/A/LDM_2013.pdf.[4] In its section on preambles, the *Manual* states: "[a]lthough infrequently used, a preamble is sometimes desirable in legislation to state legislative intent or facts showing the background and necessity for a bill." *Id.* at 152. The *Manual* additionally notes that "[a] preamble is placed in a bill between the title and the first enacting clause, and the word 'Preamble' is centered on the line above the body of the preamble. *A preamble always is uncodified* and appears only in the Session Laws, although it may be referred to in an annotation in the Annotated Code." *Id.* (Emphasis added). The *Manual* continues:

> *As an alternative to a preamble*, a codified section stating the legislature's intent, purpose, or findings may be included in the body of a bill. Such a statement *may have more legal formality* than one that is not codified; it is not, however, drafted with heading "Preamble." Instead, the statement should begin with the words, "It is the intent of the General Assembly that . . ."

---

[4] The Maryland Department of Legislative Services publishes the *Legislative Drafting Manual* each year "to assist those involved in the drafting of bills and amendments for the Maryland General Assembly" in an effort "to ensure accuracy, clarity, and uniformity in the drafting of legislation in Maryland by promoting compliance with constitutional principles, rules of law and statutory interpretation, and accepted practices regarding style, form, and process." *Id.* at iii. This opinion uses the version of the *Manual* to correspond with the 2013 legislative session.

16

*Id.* at 152–53 (emphasis added).

The *Manual* distinguishes a "preamble" from "an alternative to a preamble." While PU § 4-210(b) clearly exhibits the legislative intent for the STRIDE statute, PU § 4-210(b) is not labeled as a "preamble" nor is it located between the title of the statute and the first enacting clause. PU § 4-210(b) is positioned firmly within the statute. Most importantly, PU § 4-210(b) is a codified statement of legislative intent beginning with the words, "It is the intent of the General Assembly that . . ." For these reasons, PU § 4-210(b) is an alternative to a preamble, which retains greater legal formality, and is an operative section of the STRIDE statute.

Further supporting this conclusion, a recent Commission case examined whether PU § 4-210(b) functions as an operative portion of the STRIDE statute. *In re Columbia Gas of Maryland, Inc.*, 2014 WL 1004806, Order No. 86159 (Md. P.S.C. Jan. 31, 2014). In this matter, Columbia Gas of Maryland, Inc., a public service company, argued that since "acceleration," found only in PU § 4-210(b), was not one of the five requirements in PU § 4-210(a)(3) for an improvement or replacement to be considered an "eligible infrastructure replacement," "acceleration" was not a statutory requirement for STRIDE plan approval. *Id.* at *17–18. Quoting PU § 4-210(b), the Commission held that "[t]he Maryland General Assembly clearly expressed its intent to use the STRIDE funding mechanism to 'accelerate gas infrastructure improvements.'" *Id.* at *17. Similar to *Columbia Gas*, the present case involves a public service company arguing that PU § 4-210(a)(3) is unambiguous and that PU § 4-210(b) is not a statutory requirement for STRIDE plan approval. We concur with the Commission's analysis in *Columbia Gas* that the General Assembly clearly expressed

17

its intent in enacting PU § 4-210(b) and that this legislative intent provision is an operative portion of the STRIDE statute.

It is the Court's responsibility to ascertain and effectuate the intent of the legislature in a statutory interpretation analysis. *See State v. Bey*, 452 Md. 255, 265 (2017). Here, the General Assembly expressly stated the intent of the statute in PU § 4-210(b). Even so, we do not solely consider the legislative intent section, but rather, the plain language of the STRIDE statute as a whole. *See Lockshin v. Semsker*, 412 Md. 257, 275–76 (2010) ("We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute.") (Internal citations omitted). Analyzing both PU § 4-210(a)(3) and PU § 4-210(b), the STRIDE statute's unambiguous plain language provides accelerated cost recovery for projects located solely in Maryland. To disregard PU § 4-210(b)'s clear language, rendering the section "meaningless," would violate the basic principles of statutory interpretation.

### D. Legislative Intent Analysis

Although we have found the plain language of PU § 4-210 unambiguous, we find it beneficial to review the legislative history both as a check on our plain language reading and to eliminate alternate theories of legislative intent.

The General Assembly first considered the issue of replacing aging gas infrastructure during the 2011 and 2012 Sessions. In the 2011 Session, Senate Bill 332,

18

and the cross-filed House Bill 856, had hearings in their respective committees, Senate Finance Committee and House Economic Matters Committee, but were subsequently withdrawn. Of note, the unsuccessful 2011 legislation contained this statement of legislative intent: "The General Assembly finds and declares that the purpose of this section is to promote gas infrastructure improvements in the State by establishing a mechanism for gas companies to promptly recover investments in eligible infrastructure replacement."

In the 2012 Session, Senate Bill 541, cross-filed as House Bill 662, received a favorable report with amendments from the Senate Finance Committee but failed on a rare procedural second reading vote on the Senate floor. After the Senate floor defeat, House Bill 662 passed the House with amendments but then received an unfavorable report from the Senate Finance Committee because the Senate bill had already failed on the procedural second reader vote. The 2012 legislation modified the statement of legislative intent: "It is the intent of the General Assembly that the purpose of this section is to accelerate gas infrastructure improvements in the State by establishing a mechanism for gas companies to promptly recover reasonable and prudent costs of investments in eligible infrastructure replacement projects separate from base rate proceedings."

The following year, Senate Bill 8, cross-filed as House Bill 89, was passed into law. Senate Bill 8 contained the exact legislative intent language as well as the eligible infrastructure replacement definition found in the 2012 legislation. *See* 2013 Md. Laws, ch. 161. Interestingly, Senate Bill 8 Fiscal Note highlighted accidents occurring "*in Maryland* from 2002 through 2011, totaling $12 million in property damage and causing

19

one fatality and 16 injuries." Senate Bill 8 Fiscal Note, at 6 (emphasis added). Nothing in Senate Bill 8 Fiscal Note suggested that legislators contemplated out-of-state projects.

During deliberations for Senate Bill 8, organizations, including Washington Gas, submitted position statements. In its position statement's introduction, Washington Gas commented that many individuals and entities "have spent the past two years discussing . . . the need to speed up the replacement of aging natural gas infrastructure in Maryland." Washington Gas stated that the replacement of gas infrastructure was necessary because "Maryland ranks ninth (1,422 miles) in the U.S. of states with the largest amount of cast iron gas pipes. . . . Of the eight states with larger amounts of cast iron pipe, seven of them have accelerated pipeline replacement programs similar to what this bill would establish." Additionally, Washington Gas's position statement asserted that in total "30 states and the District of Columbia [] have passed legislation, or regulation to do what S[enate] B[ill] 8 seeks to do." Of note, Washington Gas observed that "Maryland residents support this surcharge mechanism as a way of paying for the replacement of older pipeline systems." Supporting this argument, Washington Gas references letters of support, including those from "seven mayors representing older, predominantly African-American *communities in Prince George's County that have aging pipe in service*." (Emphasis added). Washington Gas concluded by commenting that a "significant portion of the entire nation's energy infrastructure is old *and Maryland is no exception*." (Emphasis added). Clearly, Washington Gas did not discuss using the STRIDE statute with regard to out-of-state infrastructure projects. Washington Gas's argument focused on the benefits to Maryland customers but only in reference to problems with infrastructure located in Maryland.

20

Another public service company, Baltimore Gas and Electric ("BGE"), submitted a position statement in support of Senate Bill 8, "arguing that "[s]ignificant and sustained investment is needed to replace outdated gas infrastructure in Maryland." BGE detailed that its "650,000 natural gas customers [are] served by 7,000 miles of gas mains covering approximately 800 square miles across Central Maryland." BGE also stressed that "Maryland has the opportunity to join the dozens of other states that have recognized the policy priority of accelerating the replacement of outmoded gas delivery infrastructure." In listing some of the significant benefits to Maryland, BGE concluded that the bill would create new jobs in Maryland and a safer, more reliable gas system. BGE, like Washington Gas, described issues with gas lines located in Maryland, making specific references to the amount of mileage of BGE gas lines in Maryland, in its support for the STRIDE statute but did not discuss out-of-state infrastructure.

The U.S. Department of Transportation's Pipeline and Hazardous Materials Safety Administration ("PHMSA") submitted a position statement supporting the passage of Senate Bill 8. In its statement, PHMSA emphasized that:

> 3019 miles of gas distribution pipeline in Maryland were installed prior to 1960 which equates to one out of every five miles. These pipelines have been in the ground for over 50 years. Cast iron, which can be prone to failure, made up nearly 10 percent of Maryland's natural gas distribution mains. Only five States have more cast iron pipe than Maryland and according to a 2011 survey by the National Association of Pipeline Safety Representatives, Maryland is the only state in the top 10 that does not have cost recovery mechanisms for cast iron replacement programs.

In its position statement, the Commission did not support or oppose the legislation but rather suggested informational comments and recommended technical amendments.

21

The Commission reiterated its duty "to ensure a safe and reliable distribution infrastructure throughout the State" and recognized "the importance of upgrading the State's gas pipeline infrastructure."

OPC opposed the STRIDE statute and in its position statement argued that "a surcharge mechanism, in addition to base rates," was not "needed to ensure the delivery of safe and reliable service by natural gas companies." Later in its position statement, OPC stated that "[e]ven if a gas utility faces a major and sudden need for reliability or safety improvements (and there is no evidence of such a problem in Maryland), utility regulatory accounting requires that these rising expenses be normalized, that is, the rates should reflect only capital expenditures that are in excess of the Company's normal capital spending."

In response to opposition to the STRIDE statute, the bill file contains two pieces of literature sponsored by the gas distribution industry. First, a document entitled "Pass Strategic Infrastructure Development and Enhancement (STRIDE) and STRIDE FORWARD to accelerate upgrades to Maryland's natural gas infrastructure" noted that "Maryland lags behind other states in driving accelerated upgrades of its natural gas pipes." The document stressed that a majority of states have already adopted measures for accelerated natural gas pipeline replacement programs and that the PHMSA applauded Maryland's efforts to explore similar acceleration measures such as Senate Bill 8. Similarly, the second document is entitled "STRIDE: In Step with AARP's Consumer Safeguards." In the introductory paragraph, the document stated that "STRIDE (Maryland Senate Bill 8 and House Bill 89) is a proposal *to replace Maryland's outmoded, leak-prone*

22

*gas pipes* at much faster rates and at the least possible cost to utility customers." (Emphasis added).

The resounding theme of the proponents' testimony emphasized that Maryland was one of few states between 2011 and 2013 that had not adopted accelerated cost recovery for gas infrastructure replacement systems. Moreover, the testimony urged passage of the STRIDE statute because Maryland had and continues to have outdated gas pipe lines which need to be replaced for safety purposes. Therefore, while the legislative history does not specifically indicate that the legislation was intended only to apply to projects within state lines, each of the documents in the bill file focus on the goal of replacing the gas pipes and related infrastructure within the State of Maryland specifically. As such, this Court recognizes that the legislative history supports the interpretation that the General Assembly intended to accelerate cost recovery for infrastructure replacement projects located within Maryland. Stated another way, there is nothing in the legislative history to support the theory that the STRIDE statute was enacted for accelerated cost recovery for improvements made outside of the state.

Finally, at oral argument, Washington Gas argued that the STRIDE statute should be viewed as analogous to Virginia's cost-allocation statute, the Steps to Advance Virginia's Energy Plan ("SAVE") Act, which allows for accelerated cost recovery for out-of-state projects.[5] While the SAVE Act is similar to the STRIDE statute,[6] the SAVE Act

---

[5] The SAVE Act is codified at Va. Code Ann. §§ 56–603 to 56–604.

[6] "Eligible infrastructure replacement" is defined almost identically in both the STRIDE statute and SAVE Act. *Compare* PU § 4-210(a)(3) *with* Va. Code Ann. § 56–603.

23

does not reference geography anywhere in its text. *See* Va. Code Ann. §§ 56–603 to 56–604. In addition, there is no equivalent to the STRIDE statute in the District of Columbia. D.C. Code Ann. § 34–901 *et seq.* As such, we find comparison between the STRIDE statute and the Virginia and District of Columbia statutes inapposite for our purpose here.

## CONCLUSION

In summary, we conclude that PU § 4-210 is unambiguous and requires that "gas infrastructure improvements" be located "in the State" in order for a gas company to promptly recover investment costs separate from base rate proceedings. Additionally, our independent analysis of the STRIDE statute's legislative history supports our interpretation. We affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**