*Irvin M. Baddock, et al., v. Baltimore County, Maryland*, No. 1271, September Term, 2017. Opinion by Zarnoch, J.

**LOCAL GOVERNMENTS – CHARTER COUNTIES – LEGISLATIVE AUTHORITY**

Requiring hookah lounges in the County to close at midnight was a valid exercise of Baltimore County's police power, regardless of whether the restriction was encompassed within the Baltimore County Zoning Regulations' definition of "hookah lounge."

**CONSTITUTIONAL LAW – DUE PROCESS**

Requiring hookah lounges in the County to close at midnight was rationally related to public safety concerns, as well as to public health concerns about exposure to tobacco smoke, and therefore did not violate due process.

**CONSTITUTIONAL LAW – EQUAL PROTECTION**

Requiring hookah lounges, but not similar businesses, to close at midnight was not an arbitrary distinction that violated equal protection.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1271

September Term, 2017

_____

IRVIN M. BADDOCK, ET AL.

v.

BALTIMORE COUNTY, MARYLAND

_____

Meredith,
Berger,
Zarnoch, Robert A.
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Zarnoch, J.

_____

Filed: November 28, 2018

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document " authentic.



Suzanne C. Johnson, Acting Clerk

In *Alice in Wonderland*, the blue caterpillar appeared content to smoke a hookah by day. Here, we primarily consider whether legislation requiring hookah lounges to close at midnight violates due process and equal protection guaranteed by the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights. Finding no Constitutional or other legal infirmity, we uphold the restriction as a valid exercise of Baltimore County's police power.

## BACKGROUND & PROCEDURAL HISTORY

In May 2014, the Baltimore County Council passed a bill that requires hookah lounges in the County to close between midnight and 6:00 a.m. every day. Specifically, the bill amended the Baltimore County Zoning Regulations ("BCZR") to include a definition of "Hookah Lounge" that restricts hookah lounges' hours of operation. The definition of "Hookah Lounge," codified at Article 1, §101.1 of the BCZR, is as follows:

> HOOKAH LOUNGE—Any facility, establishment, or location whose business operation, whether as its primary use or as an ancillary use, includes the smoking of tobacco or other substances through one or more hookah pipes (also commonly referred to as a hookah, waterpipe, shisha or nareghile), including but not limited to establishments known variously as hookah bars, hookah lounges or hookah cafes. A hookah lounge may only operate from 6:00 a.m. to 12:00 midnight.

This restriction on hours of operation prompted the corporation that operates the Towson Nights hookah lounge ("Towson Nights"), along with the landlord of the Towson Nights premises (collectively, "Appellants"), to challenge the bill on constitutional and other grounds.

Towson Nights contends that, absent the County ordinance, approximately 90% of its business would take place between 11:00 p.m. and 2:00 a.m.[1] (Before the bill went into effect, Towson Nights stayed open until 2:00 a.m. Sunday through Thursday, and until 3:00 a.m. on Fridays and Saturdays.) Thus, Appellants claim that the restriction on business hours was tantamount to a cessation of the business's lawful use, which should have entitled Towson Nights to an "amortization" period longer than the 45 days given to comply with the act.[2] Appellants further argue: (1) the County's placement of time restrictions in a zoning ordinance is *ultra vires*; (2) the requirement to close at midnight violates substantive due process; and (3) singling out hookah lounges, but not similar businesses, violates equal protection.

---

[1] Towson Nights maintains that it has all necessary business permits, including a valid trader's license from the State authorizing the sale of tobacco products.

[2] The Court of Appeals has explained that the concept of amortization applies when a new zoning ordinance prohibits a property's then-lawful use: "[a] property owner establishes a non-conforming use if . . . the property was being used in a then-lawful manner before, and at the time of, the adoption of a new zoning ordinance which purports to prohibit the use on the property. Such a property owner has a vested constitutional right to continue the prohibited use, subject to local ordinances that may prohibit 'extension' of the use and seek to reduce the use to conformance with the newer zoning through an 'amortization' or 'abandonment' scheme." *County Council of Prince George's County v. Zimmer Dev. Co.*, 444 Md. 490, 513 n. 16 (2015) (Internal citation omitted).

Section 2 of the Baltimore County ordinance states: ". . . a hookah lounge or vapor lounge lawfully in existence on or before the effective date of this act shall comply with the operating hours requirements of this act not more than 45 days after the effective date." As discussed further below, the County's requirement that hookah lounges close at midnight does not constitute a prohibition of any property's use as a hookah lounge, and therefore the concept of amortization is inapplicable here.

The bill's constitutionality was first upheld by an administrative law judge, and then, upon a *de novo* appeal, by the Board of Appeals of Baltimore County.[3] The Circuit Court for Baltimore County affirmed the Board's decision. Appellants timely appealed.

**DISCUSSION**

I.      **Restricting Hookah Lounges' Hours of Operation Was an Exercise of the County's Police Power.**

Contrary to Appellants' position, Baltimore County did not act *ultra vires* by enacting time restrictions in a zoning regulation. Here, the provision restricting hours of operation is an exercise of the County's police power and not a zoning law, regardless of whether the restriction is encompassed within the BCZR definition of "hookah lounge." *See Piscatelli v. Bd. of Liquor License Comm'rs*, 378 Md. 623, 639 (2003) (expressly holding that an act by the General Assembly requiring certain liquor licensees in Baltimore City to cease operations at 2:00 a.m. was "not a zoning law"); *id.* ("Simply because an enactment . . . affects the activities which are otherwise allowed or disallowed under local zoning regulations, does not make the [] enactment a 'zoning law.'"); *see also, e.g., Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 564 (2012) (A legislature's choice of label does not control whether a provision falls within the legislature's constitutional power); *Shaarei Tfiloh Congregation v. Mayor and City Council of Balt.*, 237 Md. App. 102, 137 (2018) ("[I]n evaluating whether a development fee is a regulatory charge or a tax, the purpose of the enactment governs rather than the

---

3       Appellants had earlier filed a Complaint for Declaratory Relief in the Circuit Court for Baltimore County that was dismissed for failure to exhaust administrative remedies.

legislative label.") (Internal quotation marks omitted) (quoting *E. Diversified Props., Inc. v. Montgomery County,* 319 Md. 45, 53 (1990)).

Elsewhere in its ordinance, the Baltimore County Council generally authorized hookah lounges as a permitted use.[4]  The partial restriction on hours of operation contained within the definition of "hookah lounge"—bearing all the hallmarks of traditional police power legislation—does not affect whether any particular site within Baltimore County may or may not be operated as a hookah lounge, and is not a zoning law.  For this same reason, Appellants' amortization claim is inapplicable:  the requirement to close at midnight does not prohibit use as a hookah lounge, and therefore does not render Towson Nights a nonconforming use.[5]  Instead, our inquiry hinges on whether requiring hookah lounges to close at midnight is an otherwise valid exercise of the County's police power.

"The power of a political subdivision of this State to enact laws depends on the extent to which the General Assembly has delegated to it its legislative powers which are plenary, except as limited by constitutional provisions." *Montgomery Citizens League v. Greenhalgh*, 253 Md. 151, 158 (1969) (Internal quotation omitted).  As a charter county,

---

[4]    As codified at Article 2, §230.1 of BCZR, the bill added "Hookah Lounge" to the list of Business, Local (B.L.) Zone permitted uses.

[5]    Because the bill does not transform use as a hookah lounge into a nonconforming use, the question posed by *Trip Associates, Inc. v. Mayor and City Council of Baltimore*—whether increasing the frequency of use at a nonconforming use location constitutes a permissible intensification of use or an improper expansion of use—is inapposite. *See generally* 392 Md. 563 (2006).

-4-

Baltimore County received a grant of express powers from the General Assembly. *See id.* at 159 (explaining how, pursuant to Article XI-A of the Maryland Constitution, the General Assembly "provide[s] a grant of express powers for such County or Counties as may thereafter form a charter"). Accordingly, Baltimore County has the authority to pass local laws upon all matters covered by its grant of express powers from the General Assembly. Those express powers specify that, as a charter county, Baltimore County may "pass any ordinance, resolution, or bylaw not inconsistent with State law that . . . may aid in maintaining the peace, good government, health, and welfare of the county." Md. Code (2013), Local Government Article, § 10-206(a)(2). In short, Baltimore County has the express power to pass ordinances to protect the public's health and safety. For the reasons discussed in greater detail below, the County's restriction on hookah lounges' hours of operation falls squarely within this ambit.

## II. Requiring Hookah Lounges to Close at Midnight Does Not Violate Due Process.

Appellants contend that requiring hookah lounges to close at midnight is an irrational and arbitrary violation of substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights.

Economic regulation is valid under the United States Constitution when it "rests upon some rational basis within the knowledge and experience of the legislators." *United States v. Carolene Prods. Co.*, 304 U.S. 144, 152 (1938). Likewise, when determining whether an ordinance satisfies Article 24 of the Maryland Declaration of Rights, "we ask

rhetorically whether the legislative enactment, as an exercise of the legislature's police power, bears a real and substantial relation to the public health, morals, safety, and welfare of the citizens of the State or municipality." *Tyler v. City of College Park*, 415 Md. 475, 500 (2010). "The rational basis test is highly deferential; it presumes a statute is constitutional and should be struck down only if the reviewing court concludes that the Legislature enacted the statute irrationally or interferes with a fundamental right." *DRD Pool Serv., Inc. v. Freed*, 416 Md. 46, 67 (2010). Courts thus "perform a very limited function" when determining whether an economic regulation pursues legitimate governmental ends through rational means: a legislative enactment "will not be held void if there are any considerations relating to the public welfare by which it may be supported." *Tyler*, 415 Md. at 500. "Where there are plausible reasons for the legislative action, the court's inquiry is at an end." *Id.* at 502.

In attempting to argue that the time restrictions are not rationally related to either the public's health or safety, Appellants claim: (1) mere concerns about *potential* late-night criminal activity are not a rational justification for the bill; (2) isolated instances of rowdiness by hookah lounge patrons must be dealt with on a case-by-case basis of enforcement, rather than through a categorical regulation aimed at all hookah lounges in the County; and (3) potentially valid health concerns about exposure to tobacco smoke are not rationally addressed by simply requiring hookah lounges to close at midnight. We are not persuaded. To the contrary, the County's regulation is plainly a rational attempt at protecting the public's safety and welfare.

Preventive measures aimed at shielding the public from potential exposure to criminal activity can be a valid exercise of the police power. *See Dawson v. State*, 329 Md. 275, 285-86 (1993) (establishment of "preventative" and "prophylactic" 24-hour drug-free zones around schools was a "reasonable way for the General Assembly to limit the potential exposure of children to [] activities" such as drug dealing). And here, the record amply demonstrates reasonable grounds for public safety concerns. In the executive summary of the bill prepared for Councilmembers by the County's Legislative Counsel, the County stated that in a six-month-period prior to the bill's adoption, there were 37 arrests and 39 calls for service at various hookah lounges throughout the County—all occurring after 9:00 p.m.[6] The executive summary also observed that police had received disturbance and loud music calls in connection with hookah lounges throughout the County, as well as calls connecting hookah lounges to underage drinking, assault, CDS violations, and handgun violations. Moreover, we note the grim irony that two separate stabbing incidents occurred outside Appellants' own hookah lounge after midnight on the very day that the bill went into effect.

---

[6] According to a 2016 memo from the Legal Resource Center for Public Health Policy at the University of Maryland School of Law that was included in the record, police in neighboring Baltimore City had "responded to nearly 1,600 service calls between January 1 and August 29, 2015 at locations within 250 feet of the City's 19 hookah bars and lounges. Included among these service calls were more than 120 violent crime calls." (Footnotes omitted).

Additionally, public health concerns about exposure to tobacco smoke rationally support the County's regulation of operating hours.[7] The County's executive summary of the ordinance observed that "[a] typical one-hour-long hookah smoking session involves inhaling 100-200 times the volume of smoke inhaled from a single cigarette." According to one scientific study of hookah lounges in the Baltimore region that was included in the record, indoor airborne concentrations of particulate matter and carbon monoxide were not only "markedly elevated in waterpipe cafes," but "markedly greater than expected compared with venues allowing cigarette smoking." Christine M. Torrey, et al., *Waterpipe Cafes in Baltimore, Maryland: Carbon Monoxide, Particulate Matter, and Nicotine Exposure*, 25(4) J. Exposure Sci. & Envtl Epidemiology 405, 405-10 (2014), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4333110/. The study further found that the mean concentrations of particulate matter measured in the Baltimore region's hookah lounges "greatly and consistently exceeded" the EPA and World Health Organization's 24-hour ambient air quality standards, and that the overall average concentration of carbon monoxide was twice the EPA's 8-hour standard. *Id*. Despite hookah's relatively benign reputation, the scientific literature has linked hookah use to "health problems including chronic bronchitis, lung cancer, oral cancer, prostate

---

[7] For the purposes of this decision, we need not address how the County's ordinance interacts with the prohibitions and exceptions of the Clean Indoor Air Act, Md. Code (1982, 2009 Repl. Vol.), Health-General Article, §§ 24-504 and 24-505. We simply note that § 24-510 states: "Nothing in this subtitle shall be construed to preempt a county or municipal government from enacting and enforcing more stringent measures to reduce involuntary exposure to environmental tobacco smoke."

cancer, heart disease and pregnancy complications similar to those seen with cigarette smoking. It has also been tied to the hepatitis C virus and herpes from sharing mouthpieces." *Hookah Is Not Harmless, Experts Say*, 29 No. 13 Westlaw J. Tobacco Industry 6 (2014). In a 2016 memo to the People's Counsel for Baltimore County that was included in the record, the Legal Resource Center for Public Health Policy at the University of Maryland School of Law observed that nearly one in four college undergraduates use hookah, "surpassing all other tobacco products among this population," and at least half of the hookah lounges in Maryland were then "within 2 miles of a college campus." The 2016 memo further stated that "hookah smoke contains many of the same harmful components found in cigarette smoke, including nicotine, tar, and various heavy metals," and that during a one-hour session a hookah user may inhale "9 times the amount of carbon monoxide as a single cigarette."

Before turning to our equal protection analysis, we briefly address a few other claims raised by Appellants in the context of due process. First, Appellants seem to suggest that the County's time restrictions were irrational (or at least, that the County's motives were not discernible) because there was no stated purpose for the time restrictions contained within a preamble to the bill. Such a claim is without merit. Preambles are "infrequently used" in legislation and are "sometimes desirable"—hardly required. *Wash. Gas Light Co. v. Md. Pub. Serv. Comm'n*, 460 Md. 667, 684 (2018) (quoting Dep't Leg. Servs., *Legislative Drafting Manual 2013*, at 152-53 (2012)). Additionally, Appellants contend that the County's regulation might actually be a back-door attempt at the sort of alcohol regulation preempted by the Alcoholic Beverages

Article. On the one hand, this claim is a little curious for Appellants to make, considering that Towson Nights no longer allows the consumption of alcohol on its premises. In any event, the claim is meritless. For the reasons discussed above, the County has valid health and safety reasons to regulate hookah lounges on the basis of *hookah use*, and for other public safety concerns that need not relate to alcohol.

## III. Limiting the Restriction to Hookah Lounges Does Not Violate Equal Protection.

Appellants contend that requiring hookah lounges—but not similar businesses such as cigar bars, liquor licensed establishments, other "BYOB" establishments that are not hookah lounges, restaurants, billiard rooms, and convenience stores—to close at midnight is an arbitrary distinction that violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights.

In the context of economic regulation, equal protection "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Frey v. Comptroller of Treasury*, 422 Md. 111, 177 (2011) (quoting *Neifert v. Dep't of Env't*, 395 Md. 486, 506 (2006)). Legislative bodies are permitted to make commercial classifications that distinguish between entities; provided a "classification is not purely arbitrary and has a rational basis, the statute does not violate the Equal Protection Clause." *Frey*, 422 Md. at 163 (quoting *Governor of Md. v. Exxon Corp.*, 279 Md. 410, 439 (1977)); *see Lonaconing Trap Club, Inc. v. Md. Dep't of Env't*, 410 Md. 326, 343 (2009) (A classification is presumptively constitutional and will not be voided "if there are any

considerations relating to the public welfare by which it can be supported[.]") (Internal citations and quotation marks omitted).  Moreover, "[u]nderinclusiveness does not create an equal protection violation under the rational basis test. The Constitution does not demand that the Legislature strike at all evils at the same time or in the same way." *Lonaconing*, 410 Md. at 346 (Internal citations and quotation marks omitted).  "Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, [Supreme Court] decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest."  *Frey*, 422 Md. at 163 (2011) (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)) (alteration in original).

Similarly, equal protection review of economic regulation under Article 24 of the Maryland Declaration of Rights "is nearly identical to the due process examination.  In such a case, we employ the least exacting and most deferential standard of constitutional review, namely, rational basis review, under which a legislative classification will pass constitutional muster so long as it is rationally related to a legitimate governmental interest."  *Tyler*, 415 Md. at 501 (Footnote omitted).  Under this analysis, a legislative enactment will be upheld "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that the court may conclude only that the governmental actions were arbitrary or irrational." *Id*. Likewise, a legislative body is "not required by equal protection to attack all aspects of a problem at the same time; rather, [it] may select one phase of a problem and apply a

remedy there, neglecting for the moment other phases of the problem." *Id.* (Internal quotation marks and citation omitted).

As described above, legitimate concerns for the public safety and welfare undergird the County's requirement that hookah lounges close at midnight. Over a six-month period prior to the bill's enactment, Baltimore County police made 37 late-night arrests related to hookah lounges, and police received calls linking hookah lounges to underage drinking, assault, CDS violations, and handgun violations. To repeat a few of the public health concerns—significant concentrations of particulate matter and carbon monoxide have been measured at hookah lounges, and during a one-hour smoking session a typical hookah user will inhale a volume of smoke equivalent to 100 or more cigarettes. Hookah lounges seem to have particular appeal to college students, and as of 2016 at least half of the hookah lounges in the State were within two miles of a college campus. As such, the fact that the County did not require other businesses that offer late-night diversions to close at midnight does not create an arbitrary distinction that rises to the level of an equal protection violation—especially considering that there has been no contention by Appellants that the County drew upon suspect distinctions or trammeled upon any fundamental rights in differentiating between late-night establishments. Despite Appellants' characterization of hookah lounges as basically equivalent to other sites of late-night diversion (especially cigar bars), we determine that the County's distinction is reasonable. *See Piscatelli*, 378 Md. at 645 (reasonable to conclude that patrons of one type of establishment offering entertainment "might be more likely to disturb the public in the early morning hours than the patrons" of similar businesses).

-12-

Furthermore, we reiterate that a concern for the public safety does not require Baltimore County to "strike at all evils . . . in the same way" by, for instance, requiring all sites that offer late-night entertainment to close at midnight. *Lonaconing*, 410 Md. at 346. Indeed, requiring hookah lounges to close at midnight could very well free up police resources to address safety concerns that arise at the 2:00 a.m. hour when bars close. The County's restriction rationally "advances the legitimate government objective of protecting the citizenry," *id.*, and we do not discern an equal protection violation.

In sum, we hold that Baltimore County's requirement that hookah lounges close at midnight is a valid exercise of the County's police power, and neither violates due process nor equal protection.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**